Jerry Lee WHITE, Plaintiff,

v.

The KEYCHOICE WELFARE BENEFIT PLAN, Defendant.

No. 92–CV–0247J.

United States District Court,
D. Wyoming.

May 4, 1993.

Glenn E. Smith, Glenn E. Smith & Associates, Cheyenne, WY, for plaintiff.

Blair J. Trautwein, Hathaway, Speight, Kunz & Trautwein, Cheyenne, WY, for defendant.

### ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, Chief Judge.

The above captioned matter came before the Court on March 30, 1993 for hearing on the parties' cross motions for summary judgment. The plaintiff appeared through counsel, Glenn E. Smith of Cheyenne, Wyoming, and the defendant appeared through counsel, Blair J. Trautwein of Cheyenne, Wyoming. The Court, having considered the motions, the materials filed both in support of and in opposition to the motions, the arguments of counsel, and being fully advised in the premises, FINDS and ORDERS as follows:

### Background

Plaintiff, Jerry White, was an insurance agent for Key Insurance Services, a division of Key Bank of Wyoming. Key Bank of Wyoming is owned by Key Bank Shares of Wyoming, which is owned by KeyCorp, Inc., a New York corporation. KeyCorp has established an employee welfare benefit plan-group insurance contract known as Key-Choice Welfare Benefit Plan. As an employee, White received the KeyCorp Employee Handbook containing the KeyChoice Summary Plan Descriptions for the entire Key-Choice Welfare Benefit Plan, upon which he based his decision to select the KeyChoice Welfare Benefit Plan insurance program rather than continuing with his previous insurance coverage with Continental General Insurance Company. At issue in this case is the medical and dental insurance so elected by the plaintiff that is part of the KeyChoice Welfare Benefit Plan. Medical claims under the Plan are administered by Empire Blue Cross Blue Shield in New York City, New York.

In December 1991, plaintiff became seriously ill and was taken to the emergency room at the Wyoming Medical Center in Casper, Wyoming. He was diagnosed as having a pelvic diverticular abscess which had penetrated into the supradural region of his spinal cord. His physician believed this was a severe life threatening infection and directed that White be airlifted to Denver to (1) expedite therapy for a life-threatening problem and (2) minimize any long-term neurologic sequelae that could have resulted from prolonged ground transport to Denver. After arriving in Denver, plaintiff was taken by ground ambulance from the airport to a Denver hospital.

Plaintiff was later billed $340.00 for the airport-to-hospital ground transportation in Denver. He was also charged the sum of $4,185.15 for the air ambulance used to transport him from Casper, Wyoming to the airport in Denver, Colorado. Both bills were submitted to Empire Blue Cross. The $340.00 bill for the ground ambulance was paid; payment for the $4,185.15 air ambulance bill was denied. The Explanation of Benefits for KeyCorp Form indicated that coverage was denied for Wyoming Medical Center Ambulance–Ambulance because it was "non-covered ambulance service." Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibits C and D.

Coverage for the air ambulance was denied, apparently in reliance upon the language in the Group Contract, which only

covered ambulance service for surface transportation. The Group Contract is not provided to employees when making their decision to participate in the KeyChoice Welfare Benefit Plan. Employees are instead provided with the Summary Plan Description ("SPD") in the employee handbook. Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A. The SPD provides that local use of an ambulance is a covered medical expense, but fails to limit ambulance transportation to ground transportation only. This section from the Summary Plan Description provides:

Covered Your Blue Cross Medical Options

Medical cover most **medically necessary** services

Expenses at 80% of Reasonable and Customary (R & C)

charges after you satisfy your

annual deductible. The following

are considered covered medical

expenses:

\*　\*　\*　\*　\*　\*

• Local use of an ambulance

Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A at KC–9.

The SPD also includes a section entitled C. **General Medical and Dental Information**, which includes information regarding coverage eligibility, filing claims, and several other matters relating to termination or continuation of coverage under various circumstances. Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A at KC–24—KC–27.

In Section XII, designated **ERISA Information**, under the heading "Plan Benefits Can Be Changed or Discontinued," the SPD includes the following provision:

The Company reserves the right to alter, amend, delete, cancel or otherwise change plan benefits at any time. If any plan is terminated, coverage for you and your eligible family members will end. However, benefits for any legitimate claims incurred prior to a plan's termination will be provided. If any conflicts arise between the Summary Plan Description and the plan documents (contracts), the plan documents will govern.

Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A at KC–62. This paragraph is not set out in bold type and is not readily distinguishable from the rest of the text in the employee handbook.

The formal KeyChoice Welfare Plan ("Group Contract") provides, with respect to ambulance services, as follows:

VIII. *Ambulance Service.*

Benefits for Ambulance Service providing local transportation by means of a specially designed and equipped vehicle used only for transporting the sick and injured:

1. from a Member's home or scene of accident or medical emergency to a Hospital,

2. between Hospitals,

3. between a Hospital and Skilled Nursing Facility,

when such facility is the closest institution that can provide Covered Services appropriate to the Member's condition. If there is no facility in the local area that can provide Covered Services appropriate to the Member's condition, the Ambulance Service means transportation to the closest facility outside the local area that can provide the necessary service.

Benefits will also be provided for an ambulance service providing local transportation by means of a specially designed and equipped vehicle used only for transporting the sick and injured:

4. from a Hospital to the Member's home, or

5. from a Skilled Nursing facility to the Member's home.

Ambulance Service is limited to surface transportation.

Ambulance Service is limited to transportation from the home or scene of accident or medical emergency to the Hospital or Skilled Nursing Facility.

Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit H at 23–24.

After coverage for the air ambulance was denied, through his counsel, plaintiff contacted Richard Rodriguez, the head of the Human Resources Office at KeyBank in Cheyenne, Wyoming to challenge the refusal to pay the air ambulance bill. Rodriguez, following receipt of this letter, then contacted Marilyn Gay in the Albany, New York office of KeyCorp, Inc. to determine whether the denial of the claim was proper. In response to his inquiry, Rodriguez received a telefax of pages 23 and 24 of the Group Contract from the Albany office of KeyCorp setting out the plan's provisions with regard to ambulance services. Rodriguez then reaffirmed the denial of the claim by letter to plaintiff, stating that air ambulance is not covered under the current medical plans.

### Standard of Review for Summary Judgment

 Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits on file, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party's burden may be met by identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether these burdens have been met, the court is required to examine all evidence in the light most favorable to the non-moving party. *Barber v. General Electric Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

 Once the moving party has met its initial burden, the burden shifts to the party resisting the motion. That party must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Manders v. Oklahoma ex rel. Dept. of Mental Health,*

875 F.2d 263, 265 (10th Cir.1989) citing *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553.

### Discussion

 Actions challenging the denial of benefits under an ERISA plan are subject to *de novo* review, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. In the event that the administrator or fiduciary does have such authority, review of the decision to deny benefits will be under the arbitrary and capricious standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). *See also Winchester v. Prudential Life Ins. Co. of America,* 975 F.2d 1479, 1483 (10th Cir.1992). In this case, both parties agree that the *de novo* standard of review applies.

Plaintiff argues that the SPD fails to disclose that local use of an air ambulance is excluded from coverage. That failure, he argues, violates the provisions of 29 U.S.C. § 1022(a)(1) and (b), which provides:

(a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b) of this title.

\* \* \* \* \* \*

(b) The plan description and summary plan description shall contain the following information: The name and type of administration of the plan; the name and address of the person designated as agent for

the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).

Section 1133 of Title 29, United States Code, provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Plaintiff reasons the SPD is not adequate to inform plan participants that air ambulances are excluded from coverage or that ambulance expenses from one city to another will be covered under the Group Contract plan if surface transportation is used. Plaintiff also asserts that where there is conflict between the SPD and the insurance policy, the SPD controls. It is significant to plaintiff that Empire Blue Cross paid the ground ambulance for the trip from the airport in Denver to the hospital in Denver, while denying payment for air ambulance from Casper to Denver. By paying for the ground transportation in Denver, plaintiff argues there is an irreconcilable conflict between the SPD and the Group Contract policy issued to KeyCorp. He argues that the plan cannot contend that a ground ambulance used to transport him from the Denver airport to the Denver hospital is "local use" but that an air ambulance from Casper where the plaintiff resided when the charge was incurred to Denver is other than "local use" of an ambulance.

He relies on caselaw which holds that where there is any ambiguity or conflict between the terms of an SPD adopted under 29 U.S.C. § 1022 with the master contract or insurance policy, the SPD controls. *See, e.g., Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991). The case cited is also offered as support for the proposition that the binding nature of SPD provisions cannot be disclaimed. Plaintiff argues that if an insurer could, simply by use of such disclaimers, avoid the binding effect of the SPD, the statutory requirement of an accurate and comprehensive summary plan description in accordance with 29 U.S.C. § 1022 would be avoided. Plaintiff urges the Court to construe ambiguous provisions in the SPD against the employer and in favor of coverage.

Defendant characterizes the issue in this case as being only whether "local use of an ambulance" means anything other than "local use of an ambulance" under the SPD. Defendant argues that the SPD limits coverage to "local use" of an ambulance, that the plan documents broaden coverage but limit such broadened coverage to ground transportation only. Defendant asserts that the SPD is adequate and complies with the requirements of 29 U.S.C. § 1022. ERISA laws are not violated simply because the SPD could have provided more specific language.

Contrary to the plaintiff's arguments, Defendant asserts that the disclaimer in the SPD requires that plan documents control over the SPD in the event of a conflict.

However, defendant maintains there is no conflict between the SPD and plan documents in this case. Defendant states further that plaintiff failed to exhaust his available administrative remedies. Defendant refers to the SPD provisions, in Section XII, **ERISA Information,** under the heading "In Case Your Claim for Benefits is Denied," which state:

Any notice of denial of your claim for benefits will include the specific reasons for denial and references to the relevant plan provisions on which the denial was based.

Within 60 days after receiving a denial, you or your authorized representative may appeal the decision by:

1. Reviewing pertinent plan documents

2. Submitting issues and comments in writing

3. Requesting a review in writing.

Contact the carriers listed if you wish to request a review of an insurance claim. If you wish to request a review of a savings plan claim, contact the appropriate plan administrator.

A decision on your appeal will normally be given to you within 60 days of the receipt of your request. If special circumstances warrant an extension, you will be notified in writing of this and the decision will be made no later than 120 days after receipt of your appeal.

Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A at KC–60. Defendant contends that plaintiff failed to comply with this appeals procedure within 60 days after receiving the Explanation of Benefits for KeyCorp denying his claim for air ambulance service, and that KeyChoice Welfare Benefit Plan correctly determined that Plaintiff's review request was not only inadequate but untimely. Additionally, Defendant argues that Rodriguez was not the agent of KeyCorp, the Plan or of Empire Blue Cross. Defendant asserts that his statements and representations are not those of an agent which could be used against the defendant as principal in the absence of other evidence.

■ Review in this case will focus on the scope of coverage provided for ambulance service. The Tenth Circuit noted in *Blair v. Metropolitan Life Ins. Co.,* 974 F.2d 1219, 1221 (10th Cir.1992) (quoting *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192, 1202 (10th Cir.1992), in conducting such *de novo* review:

We are mindful that the objective in construing a health care agreement, as with general contract terms, is to ascertain and carry out the true intention of the parties. However, we do so giving the language its common and ordinary meaning *as a reasonable person in the position of the HMO participant,* not the actual participant, would have understood the words to mean. *See Bruch,* 489 U.S. at 112, 109 S.Ct. at 955 (no deference to either party's interpretation). Under general contract law principles, "words cannot be written into the agreement imparting an intent wholly unexpressed when it was executed."

\* \* \* \* \* \*

To do so would thwart the congressional purpose of ERISA's disclosure provisions which are designed to ensure "that 'the individual participant knows exactly where he stands with respect to the plan' y(3)27" *Bruch,* 489 U.S. at 118, 109 S.Ct. at 958. Thus, in reviewing the SPD and Group Contract, the standard to be applied will be that of a reasonable person in the position of an employee welfare benefit plan participant.

The Court further notes that this is not a case where a plan beneficiary or participant is seeking to enforce alleged oral modifications of an ERISA-governed employee benefit plan, as was the case in *Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986). Nor is it a case where the plan administrator seeks to limit coverage in a plan to that which is less comprehensive in the SPD, as was the case in *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192 (10th Cir.1992). Rather, this case is one in which the conflict between the language used in the SPD and the language used in the Group Contract has created an ambiguity in the scope of coverage. This case is similar to *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991), in which the Fifth Circuit determined that, in

the event of conflict between SPD and a master policy, the SPD will control. The *Hansen* court determined that its conclusion that SPD statements are binding is consistent with the purposes of ERISA, i.e., requiring that summary plan descriptions be accurate and sufficiently comprehensive to reasonably apprise plan participants of their rights and obligations under the plan. *Hansen,* 940 F.2d at 981–982. The *Hansen* court also discussed disclaimers contained in SPDs:

> Ruling that the statements of the summary plan description are binding necessarily forecloses Continental's argument about this disclaimer. To give effect to such a disclaimer would wholly undermine the rule that the statements of the summary plan description are binding. Indeed, if the insurer could escape the binding effect of the summary simply by adding a disclaimer to the summary, the insurer could escape the requirement of an accurate and comprehensive summary plan description. Accordingly, this Court holds, as a necessary corollary to its holding that the statements in the summary plan description are binding, that drafters of a summary plan description may not disclaim its binding nature.

*Hansen,* 940 F.2d at 982.

■ However, this Court is not free to ignore existing Tenth Circuit precedent dictating that SPD disclaimers stating that the master policy is to govern in the event of a conflict between the SPD and policy are to be given effect. *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192, 1201 (10th Cir.1992). However, where the purported disclaimer is not conspicuous and does not stand out from the rest of the text made available to the employee opting to participate in the welfare benefit Plan, this Court is of the opinion that the disclaimer should not be given effect. For a disclaimer to be effective, it must be conspicuous, which is a question of law.

As in *Jimenez v. Colorado Interstate Gas Co.,* 690 F.Supp. 977 (D.Wyo.1988), this Court is once again faced with " 'strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice.' " *Jimenez,* 690 F.Supp. at 980 (quoting *Small v. Springs Industries, Inc.,* 292 S.C. 481, 357 S.E.2d 452 (1987). Although the disclaimer in this case concerns matters different from those in *Jimenez,* the Court believes the same principles may be used to guide the Court in determining whether the disclaimer in the SPD should be given effect. As in *Jimenez,* the disclaimer in this case is not set off in any way to attract attention; it falls under the heading "Plan Benefits Can Be Changed or Discontinued"; nothing is capitalized that gives notice of a disclaimer; the type size equals that of other provisions on the same pages; no border sets the disclaimer apart from other provisions on the same page. The Court is of the opinion that the disclaimer in this case should not be given effect and that the terms of the SPD should govern.

■ Although a beneficiary's view of a summary plan description is important, the correct interpretation of the SPD should not be unrealistically narrow. *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 939 (5th Cir.1993). In this case, the dispute concerns the meaning of the term "Local use of an ambulance." In a state such as Wyoming, where medical facilities are often great distances from an individual's residence, it is not unreasonable to assume that "local" may encompass an area greater than the plan participant's immediate community. This is also consistent with the provisions of the Group Contract which provides coverage for transportation between hospitals appropriate to the Member's condition. Where the SPD fails to indicate that only ground transportation will be a covered expense, any attempt to exclude the use of air ambulance service should be precluded. As the court in the *Hansen* case stated:

> [T]he ambiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter. Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual

employee, who is powerless to affect the drafting of the summary of the policy and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Accuracy is not a lot to ask. And it is especially not a lot to ask in return for the protection afforded by ERISA's preemption of state law causes of action—causes of action which threaten considerably greater liability than that allowed by ERISA.

*Hansen,* 940 F.2d at 982. This is in contrast to the disclaimer in a summary plan description which was given effect in *Christie v. K–Mart Corp. Emp. Ret. Pension Plan,* 784 F.Supp. 796, 805 (D.Kan.1992) (disclaimer in large, bolded type at conclusion of SPD). *See also Miller v. New York State Teamsters Council Health and Hospital Fund,* 1992 WL 72139 (N.D.N.Y.1992) (Unpublished opinion) (also involved dispute over coverage for air ambulance service).

■ With respect to the argument that plaintiff has failed to exhaust his available administrative remedies under the plan, the Court has considered the provisions of the SPD in Section XII, **ERISA Information,** under the heading "In Case Your Claim is Denied," set out in full in the foregoing portions of this Order. Defendant urges the Court to determine that all avenues of administrative redress under the plan must be exhausted before commencing a legal action arising out of a denial of benefits under an ERISA plan.

■ ERISA itself does not mandate that administrative remedies be exhausted, although as a general principle a plan participant or beneficiary must exhaust intra-plan remedies before bringing suit challenging a decision to deny benefits. *Healy v. Axelrod Const. Co. Pension Plan & Trust,* 787 F.Supp. 838, 842 (N.D.Ill.1992). Exceptions to the general requirement of exhaustion include where "an intra-plan appeal would be futile or where a beneficiary is denied meaningful access to review procedures.... An exception has been recognized when a plan's remedies are inadequate...." *Id.* (citations omitted). The policies and purposes which are promoted by the exhaustion rule are to promote judicial economy by encouraging settlement and filtering out frivolous claims, promote consistent treatment of claims, non-adversarial dispute resolution, and decrease the cost and time of settlement. *Id.* at 842–843 (citing *Powell v. AT & T Communications, Inc.,* 938 F.2d 823, 826 (7th Cir.1991)); *see also Garland v. General Felt Industries, Inc.,* 777 F.Supp. 948, 950–951 (N.D.Ga.1991); *McLean Hospital Corp. v. Lasher,* 1993 WL 128489 at 10 (D.Mass.1993) (extensive discussion regarding exhaustion of remedies doctrine in this context).

■ To rely on the exhaustion of remedies doctrine, compliance with applicable ERISA provisions is required. When a claim is denied, 29 U.S.C. § 1133 requires that notice of the claim denial include specific information. 29 C.F.R. 2560.503–1(f) sets out with more specificity what shall be included in the contents of such a notice:

(f) Content of notice. A plan administrator or, if paragraph (c) of this section is applicable, the insurance company, insurance service, or other similar organization, shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

29 C.F.R. 2560.503–1(g) continues:

(g) Review procedure. (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such pro-

cedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:

(i) Request a review upon written application to the plan;

(ii) Review pertinent documents; and

(iii) Submit issues and comments in writing.

(2) To the extent that benefits under an employee benefit plan are provided or administered by an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws of one or more States, the claims procedure pertaining to such benefits may provide for review of and decision upon denied claims by such company, service or organization. In such case, that company, service, or organization shall be the "appropriate named fiduciary" for purposes of this section. In all other cases, the "appropriate named fiduciary" for purposes of this section may be the plan administrator or any other person designated by the plan, provided that such plan administrator or other person is either named in the plan instrument or is identified pursuant to a procedure set forth in the plan as the person who reviews and makes decisions on claim denials.

(3) A plan may establish a limited period within which a claimant must file any request for review of a denied claim. Such time limits must be reasonable and related to the nature of the benefit which is the subject of the claim and to other attendant circumstances. In no event may such a period expire less than 60 days after receipt by the claimant of written notification of denial of a claim.

(h) Decision on review. (1)(i) A decision by an appropriate named fiduciary shall be made promptly, and shall not ordinarily be made later than 60 days after the plan's receipt of a request for review, unless special circumstances (such as the need to hold a hearing, if the plan procedure provides for a hearing) require an extension of time for processing, in which case a decision shall be rendered as soon as possible, but not later than 120 days after receipt of a request for review.

\* \* \* \* \* \*

In this case, defendant's notice of the claim denial did not strictly comply with the federal regulations. The Explanation of Benefits form sent to plaintiff did not reference the relevant plan provision providing the basis for denial of the air ambulance claim. The denial did state that the claim was for a "non-covered ambulance service." The reverse side of the notice denying the claim also includes information on "appeal procedures." This section provides that "[u]nder most programs" a member has a right to appeal a claim by filing a written request. This section advises that the appeal should be filed within 60 days after the date the member receives the Explanation of Benefits concerning the claim, and further advises a final determination on the appeal will usually be made within 60 days. However, this section also states:

Your program may have a different Appeals Procedure. Check with the person who handles your group benefits to be sure.

Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit D.

The employee handbook containing the SPD at issue in this case provides certain introductory information:

Since benefits and other employee practices comprise a significant portion of your compensation, you are encouraged to become familiar with these programs. If you have any questions that are not answered in this Handbook please contact your Human Resources Office.

Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A. The ERISA portions of the SPD advise the participant to contact the carrier (Empire Blue Cross) to request a review of an insurance claim. Information regarding appeal procedures on claim denials is confusing and ambiguous.

In this case, plaintiff contacted the Human Resources Office of KeyBank in Cheyenne, Wyoming. The result of his inquiries was that Richard Rodriguez, after consulting with

the KeyCorp home office (the plan administrator and plan sponsor) in Albany, New York, confirmed that the air ambulance claim would continue to be denied. Although an "appeals procedure" is referenced in the Explanation of Benefits form, as well as in the SPD itself, the appeals procedure is not described as being mandatory. Section C. **General Medical and Dental Information,** under the heading "Filing Claims", advises individuals who have questions about a claim to call Blue Cross. Plaintiff's Memorandum in Support of His Motion for Summary Judgment, Exhibit A at KC–24. The ERISA information section, at KC–60 of Exhibit A, states that an individual may appeal a decision by reviewing pertinent plan documents, submitting issues and comments in writing and requesting a review in writing.

In this Court's opinion, the exhaustion of remedies doctrine should not be applied to preclude plaintiff from proceeding with this federal action. The appeal procedures described in the documents made available to plaintiff are not mandatory, and are contradictory, inconsistent, and somewhat vague. The appeal procedures do not appear to be calculated to lead to meaningful review and disposition of plaintiff's claim. The facts before the Court further suggest that application of the exhaustion doctrine, in requiring further review by the "appropriate named fiduciary" would in all likelihood be futile, inasmuch as plaintiff has been told repeatedly that his air ambulance claim would not be paid. The policies which underlie the exhaustion of remedies doctrine would not be furthered in this instance and it is most likely that the sole result if the doctrine were to be applied would be delay and little else.

It is the conclusion of the Court that the SPD providing for local use of an ambulance would cause a reasonable plan participant to believe that all of the ambulance services which were provided to plaintiff in this instance would be a covered expense. Medical facilities in the Rocky Mountain Region serve a vast geographical area and the use of air ambulance transportation between hospitals is not unusual. The SPD that is provided to Key employees does not in any place limit ambulance transportation to ground trans-

portation and does not suggest that ambulance service will not include air transportation. The disclaimer in the SPD, as the Court has previously determined, is not to be given effect for it is not conspicuous as a matter of law. There is no evidence that suggests plaintiff would obtain meaningful review of his claim if he was now required to resort to the "appeals procedures" variously described in the documents that have been made available to him. Thus, this Court has determined that the exhaustion of remedies doctrine shall not apply in this instance. For the reason that there are no genuine issues of material fact and plaintiff is entitled to judgment as a matter of law, and in accordance with the foregoing, it is therefor

**ORDERED** that Plaintiff's Motion for Summary Judgment shall be, and is, **GRANTED,** and it is further

**ORDERED** that Defendant's Motion for Summary Judgment shall be, and is, **DENIED,** and it is further

**ORDERED** that plaintiff shall be entitled to recover the amount of his claim for benefits, $4,185.15, plus interest at the statutory rate, and reasonable attorney's fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1), and it is further

**ORDERED** that plaintiff shall submit his certificate of costs and attorney's fees with supporting affidavits and documentation on or before May 17, 1993, and it is further

**ORDERED** that defendant shall submit objections thereto on or before May 31, 1993, and it is further

**ORDERED** that a hearing on plaintiff's costs and attorney's fees and defendant's objections thereto shall be held on at 8:00 a.m. on June 15, 1993 at the Federal Courthouse, 146 East Simpson, in Jackson, Wyoming. The parties may appear at such hearing by telephone. Those who wish to do so should contact the Court.