**Edward W. JIMENEZ, Plaintiff,**

v.

**COLORADO INTERSTATE GAS COMPANY, Defendant.**

No. C88–0064J.

United States District Court, D. Wyoming.

Aug. 4, 1988.

Jane A. Villemez, Cheyenne, Wyo., for plaintiff.

Elmer William Rideout, III, Jeffrey M. Goldsmith, Colorado Interstate Gas Co., Colorado Springs, Colo., for defendant.

## ORDER RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STAY COUNT II OF PLAINTIFF'S COMPLAINT

JOHNSON, District Judge.

### I. BACKGROUND

Plaintiff, Edward W. Jimenez, is a Mexican–American. From 23 March 1973 until 15 May 1987, he was employed by defendant, Colorado Interstate Gas Company. In Fall 1985, defendant's representatives advised plaintiff that his well tender position would be eliminated as part of an ongoing, system-wide reduction in force. They further advised him that well tender duties would be consolidated with those of meter inspector. After passing a written test in September 1986 and a performance test in November 1986, plaintiff qualified to apply for the meter inspector position. On 19 November 1986, plaintiff's supervisor formally reprimanded him, which precluded him from job bidding until 17 February 1987. On 15 May 1987, defendant terminated plaintiff's employment. Plaintiff alleges that this termination violated his federal rights under 42 U.S.C. § 1981, and 42 U.S.C. § 2000e et seq. In addition, he alleges that the termination violated implied contract rights arising from defendant's standard operating procedures.

### II. SUMMARY JUDGMENT

A party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate when a moving party points out an absence of evidence to support the non-moving party's case; a moving party is not required to support its motion with affidavits or other similar ma-

terials *negating* the non-movant's claim. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis in original).

 A material fact is one that might affect the outcome of a suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue as to a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* A moving party is entitled to judgment as a matter of law where the non-moving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 106 S.Ct. at 2553.

## III. DEFENDANT'S STANDARD OPERATING PROCEDURES

██ For years, defendant has had standard operating procedures (SOPs) covering a wide range of subjects. Plaintiff contends that the SOPs have created implied contract rights between defendant and him. Defendant resists this contention.

Historically, Wyoming has followed the common law rule of employment at-will. *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 27 (Wyo.1984). An employment at-will contract is one without a definite term. *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo.1985). Under an employment at-will contract, an employee may resign at any time and an employer may discharge an employee at any time. Neither act is a breach of the contract. *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 282 (Wyo.1985). Wyoming has recently adopted one exception to employment at-will, namely, that an employer's personnel manual or handbook may constitute an implied term of an employment contract. *Parks*, 704 P.2d at 705–07.

The applicable Wyoming cases have involved employee handbooks and manuals that were distributed on an individual basis. *Rompf*, 685 P.2d at 29; *Parks*, 704 P.2d at 704; *Alexander v. Phillips Oil Company*, 707 P.2d 1385, 1387–88 (Wyo.1985); *Leithead v. American Colloid Company*, 721 P.2d 1059, 1061 (Wyo.1986). Defendant attempts to distinguish these cases by arguing that its SOPs are not an employee manual, but are instead operational guidelines generally furnished to its supervisory employees for their use and guidance. In support of this contention, it cites *Lakeside v. Freightliner Corporation*, 612 F.Supp. 10 (D.Or.1984). Having reviewed the applicable law, this court must reject defendant's claim.

In *Lakeside*, the court examined an undistributed personnel manual and concluded that it was not intended to be part of the plaintiff's employment contract. The court reasoned that the defendant company had issued the manual simply to instruct its managers on responses to a wide range of personnel policy concerns. As support for this view, the court observed that the manual was distributed to managers only and that plaintiff's access to the manual was limited to reading it at different managers' desks or managers' work areas. *Id.* at 12. The present case differs in that defendant's SOPs were posted in the employees' coffee room. This case also differs from *Lakeside* in that the SOPs now before this court contain language relating to cause for termination.

Under these circumstances, this court will not permit defendant to defeat a claim for breach of implied contract by asserting that its SOPs are simply operational guidelines for its supervisory employees. *Thompson v. Kings Entertainment Company*, 653 F.Supp. 871, 874 (E.D.Va.1987) (Summary judgment was improper against an employee asserting breach of implied contract based upon terms contained in a supervisor's manual when (1) the employee did not have an individual contract, (2) the manual's terms made it clear that all employees were to be made aware of its provisions, and (3) the manual specifically dealt with the manner of terminating an employee, the single most important aspect of an employment relationship); *Morriss v. Coleman Company, Inc.*, 241 Kan. 501, 738 P.2d 841 (1987) (Summary judgment was improper against an employee asserting breach of implied contract based upon the

terms contained in the supervisor's manual that allegedly tied termination to good cause).

To succeed on his implied contract claim, plaintiff must point to provisions in defendant's SOPs that alter the presumed right to discharge him at any time and without cause. Under Wyoming decisions, handbooks that list misconduct that could result in discharge imply that cause is required. *Leithead*, 721 P.2d at 1063 (citing *Alexander*, 707 P.2d at 1388; *Parks*, 704 P.2d at 705). Language in defendant's SOPs relating to causes for immediate termination and disciplinary procedures is substantially the same as language contained in the cited cases. Accordingly, the same result obtains—the tenor of the SOPs not only reflects the necessity for the existence of cause for discharge, it specifically requires it. *See Parks*, 704 P.2d at 706.

Defendant attempts to defeat the implied contract claim with a disclaimer found in its SOPs, which reads as follows:

> The Standard Operating Procedures contained herein do not constitute terms and/or conditions of an employment contract and will be reviewed from time to time. They may be modified in any way by the Company as circumstances warrant.

For this disclaimer to be effective against plaintiff, it must be conspicuous. *See, e.g., Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987); *Bailey v. Perkins Restaurants, Inc.*, 398 N.W.2d 120, 122 (N.D.1986); *Castiglione v. Johns Hopkins Hospital*, 69 Md.App. 325, 517 A.2d 786, 793 (1986). Whether a disclaimer is conspicuous is a question of law.[1] No genuine issue of fact exists as to matters such as the disclaimer's location or size, but exists to its effect only.

Defendant was not obligated to write SOPs and to post them in an employee area. Because it has done so, the court is now faced with "strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." *Small v. Springs Industries, Inc.*, 292 S.C. 481, 357 S.E.2d 452 (1987) (citation omitted). These policy reasons help explain why an effective disclaimer must be conspicuous. The disclaimer in question is not set off in any way that would attract attention. It falls under the heading "GENERAL INSTRUCTIONS" and the subheading "CONTENTS." Nothing is capitalized that would give notice of a disclaimer. The type size equals that of other provision on the same page. No border sets the disclaimer apart from any other paragraph on the page. The disclaimer is not conspicuous. Therefore, this court grants summary judgment that the SOPs create implied contract rights.[2]

## IV. BREACH OF IMPLIED CONTRACT

### A. Bidding Rights

■ Plaintiff claims that defendant breached Employee Status No. 4 of its SOPs by not providing him with advance notice that his bidding rights might be denied. That SOP provides in part as follows:

> Employees being subjected to written disciplinary action may have their bids denied until such time as the situation causing the discipline is resolved. Employees whose bids may be denied for their involvement in disciplinary action shall be so notified in writing.

Plaintiff contends that this language obligated defendant to provide him with notice that his bid might be denied, even before a bid was made. This court disagrees. The event triggering written notice is the bid, not the disciplinary action. The SOP prevents an employee subject to written disci-

---

1. This point is illustrated by cases recognizing that disclaimers must be clear and conspicuous, yet still granting summary judgment. *See, e.g., Castiglione*, 517 A.2d 786; *Bailey*, 398 N.W.2d 120. There is nothing unusual in treating conspicuousness as a matter of law. Wyoming does exactly that in its Uniform Commercial Code. Wyo. Stat. § 34–21–120(x) (1977).

2. Partial summary judgment in a plaintiff's favor is permissible even though he did not request it. *See Leithead*, 721 P.2d at 1064.

pline who has submitted a bid from a lingering uncertainty as to whether defendant will consider it. Plaintiff received this protection.

On 21 November 1986, plaintiff was placed on written discipline and certified that he had read the document listing the reasons for the discipline. He later submitted bids for two meter inspector positions. On 12 December 1986, J.C. Garnett sent plaintiff written notice that his bidding rights were denied. None of the foregoing events are inconsistent with the cited SOP.

■ Even if the court agreed with plaintiff's interpretation of the notice required under the SOP, plaintiff still could not prevail. At his deposition, plaintiff stated that he would have done "probably nothing" differently had he received the notice that he now claims he was due.[3] Jimenez Deposition at p. 17. Therefore, the alleged breach of this SOP did not damage him. *Cf. Rompf,* 685 P.2d at 29.

### B. Reclassification to Labor Pool

■ Plaintiff alleges that defendant breached Employee Status No. 4 of the SOPs by terminating his employment rather than reclassifying him to the labor pool. Plaintiff relies on the SOP as posted in the employee coffee room, which provides in part as follows:

> When an employee's job is discontinued, the employee shall be placed in a surplus status and shall have a period of six months from the effective date of such job status in which to bid into another job for which the employee is qualified at any location.
>
> \* \* \* \* \* \*
>
> Should one of the above-subject employees, at any time during the six-month period, fail to bid on any equal or higher job for which he is qualified and which does not require a change in resident location, the Company will immediately start bidding the employee system-wide on all jobs of equal or higher pay for

which the employee is qualified. There will be no penalty for this type of downbid. *If at the end of the six-month period the employee has not been assigned a permanent job, the employee shall be reclassified to the labor pool.*

(Emphasis added.) Defendant relies on a later version of this SOP, differing from the earlier SOP in the last sentence only. The relevant portion of that SOP provides as follows:

> Should one of the above-subject employees, at any time during the six-month period, fail to bid on any equal or higher job for which he is qualified and which does not require change in resident location, the Company will immediately start bidding the employee system-wide on all jobs of equal or higher pay for which the employee is qualified. There will be no penalty for lateral or down-bids. *If at the end of the six-month period the employee has not been assigned a permanent job, the employee shall be reclassified to Utility Man. If there are no labor pool vacancies, or if the employee does not accept the position offered, the employee may be terminated.*

(Emphasis added.) Plaintiff read a copy of this subsequent SOP on 14 November 1986 in defendant's offices and signed a statement to that effect. He felt that he understood it at the time. Jimenez Deposition at 114–17. The court must now decide which SOP applies.

*Thompson v. Kings Entertainment Company,* 653 F.Supp. at 875, involved an employer that had granted its employees greater than at-will status in an employment handbook and then sought to return them to at-will status by issuing an inconsistent second handbook. The court noted that the issue of whether an employer could rightfully do this appeared to be one of first impression. The court expressed its view that an employer who grants rights in a policy handbook should be able to retract those rights with a similar act.

---

**3.** In a later affidavit, plaintiff tried to explain this answer away as being due to "frustration" and his being under the belief "that [his] efforts to restore [his] bidding privileges may well have been futile." This court disregards the attempted explanation since the relevant inquiry is what plaintiff would have done at the time and not what he would do now.

At the same time, the court did not allow the employer to issue a second handbook unilaterally that would return an employee to at-will employment.

To ensure that the employee assented to and received consideration for the change in status, the court required that the elements of contract modification be met. For the second manual to control, the court required three showings from the employer: (1) that the employee was aware of the handbook, (2) that he understood its terms governed his employment, and (3) that he worked according to those terms. *Id.* at 876; (citing *Thompson v. American Motor Inns, Inc.*, 623 F.Supp. 409, 416–17 (W.D. Va.1985)).

This case differs from *Kings Entertainment Company* in one key respect. On 14 November 1986, Mr. Jimenez was called into his employer's office and provided with a copy of the current SOP to read. After reading the SOP, plaintiff signed a statement that reads as follows:

This is to verify that you, Mr. E.W. Jiminez, have read and understand S.O.P. Employee Status No. 4 (Surplus Status). Your surplus status will become effective November 15, 1986.

Faced with these facts, the court must conclude that the later SOP controls.

■ Defendant argues that it is entitled to summary judgment that this SOP was not breached. Defendant first cites plaintiff's deposition testimony in which he stated that he does not think he would have accepted reclassification to a utility man. Jiminez Deposition at p. 117. In a subsequent affidavit, plaintiff explained that he would not have accepted the reclassification unless consideration was given to his certification as a meter inspector. This explanation is sufficient to allow plaintiff to proceed.

■ As another ground supporting its view that the SOP was not breached, defendant cites the affidavit of William D. Davis, who stated that "[o]n May 15, 1987, there were no labor pool/Utility Man openings available to which Mr. Jiminez could be reassigned." Davis Affidavit at ¶ 5. In Mr. Davis's deposition by plaintiff, he stated that there were no such positions available in the Rawlins district. Because he could not recall whether such positions were available in other portions of the CIG operation area, summary judgment is inappropriate. Davis Deposition at p. 2.

### C. Grievance Procedures.

■ Plaintiff alleges that defendant breached Employee Status No. 6 of the SOPs by not complying with the grievance procedures. To obtain access to the grievance procedures, plaintiff was required to fill out a personnel contact form and submit it to the first-line supervisor. He could have obtained this form from office supply or the field district office. Exhibit D to Defendant's Motion for Partial Summary Judgment. Plaintiff did not do so. Davis Affidavit at ¶ 4. Plaintiff had access to the SOPs and nothing in them even suggests that defendant was obligated to advise plaintiff how to initiate the grievance procedures. Further, the court notes that plaintiff discussed his complaints with his supervisor, the field supervisor, the district superintendent, the assistant vice-president of operations, and the vice-president of operations. Discussions with the vice-president of operations lasted approximately five hours. Plaintiff has admitted that he received a fair hearing. Jiminez Deposition at 12–15. Defendant is entitled to summary judgment on plaintiff's grievance procedures claim.

### D. Implied Covenant of Good Faith and Fair Dealing

■ Plaintiff alleges that defendant "breached the implied covenants of good faith and fair dealing in Plaintiff's employment contract by retaliating against him for exercising his right to complete the comments section of his performance evaluation and for attempting to advance within the company." Complaint, ¶ 47. The court reads this as alleging breach whether plaintiff's employment contract was at-will or something greater.

Wyoming does not allow claims for breach of the implied covenant of good

faith in employment contracts that are not at-will. *Leithead,* 721 P.2d at 1064. Language in *Parks* indicates that this is also the case in employment contracts that are at-will:

> Wyoming follows the common-law rule that either party may terminate an employment at will contract (one without a definite term) at any time for any reason or without reason, *and that such is not violative of any implied covenant of good faith and fair dealing.*

704 P.2d at 704 (citations omitted) (emphasis added). Despite this language, plaintiff has some basis to argue that his claim remains viable for an at-will employment contract in Wyoming. *See Greco v. Halliburton Company,* 674 F.Supp. 1447, 1450 (D.Wyo.1987) ("To date, the Wyoming Supreme Court has reserved a decision on whether termination of employment under an at-will contract might, under the appropriate circumstances, breach an implied covenant of good faith and fair dealing. *See [Rompf,* 685 P.2d] at 28; *see also Mobil Coal,* 704 P.2d at 709 (Rose, J., specially concurring)."

To the extent that the claim remains open in Wyoming, this court believes that the Wyoming Supreme Court would not apply the doctrine to this case. In reviewing the status of the doctrine in other jurisdictions, the *Rompf* court cited *Mitford v. de Lasala,* 666 P.2d 1000 (Alas.1983), and *Fortune v. National Cash Register Company,* 373 Mass. 96, 364 N.E.2d 1251 (1977), as prohibiting "an employer from dismissing a long-term employee *in order to prevent his sharing in profits or collecting commissions pursuant to the contract." Rompf,* 685 P.2d at 28. (Emphasis added.) Nothing suggests such a motive here, and summary judgment is granted to defendant as to the covenant of good faith and fair dealing claim.

## IV. PLAINTIFF'S FEDERAL CLAIMS (42 U.S.C. § 2000e–5 AND 42 U.S.C. § 1981): STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff seeks to recover damages resulting from the wrongful termination of his employment. The complaint also refers to other alleged discriminatory acts including racial slurs, denial of training, and removal from a desirable well-tending run. Defendant correctly points out that plaintiff could not bring separate claims for relief for these acts. Each suffer from statute of limitations or exhaustion of administrative remedies problems or both. Plaintiff denies that he ever intended to bring them as separate claims for relief. He states that these acts are offered only as evidence of racial animus, and not as separate claims for relief. The parties no longer dispute the issue raised since each agree damages are sought only for wrongful termination of employment.

## V. STAY OF § 1981 COUNT

In *Runyon v. McCrary,* 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976), the Supreme Court observed that it was well-established that 42 U.S.C. § 1981 prohibited "racial discrimination in the making and enforcement of private contracts." In *Patterson v. McLean Credit Union,* — U.S. —, 108 S.Ct. 1419, 99 L.Ed.2d 879 (1988), the Court requested that the parties brief the issue of whether *Runyon's* interpretation of § 1981 should be reconsidered. Defendant asks that this court stay the § 1981 claim against it until *Patterson* is decided. In support of this request it cites one case, *United Gas Pipe Line Company v. Tyler Gas Service Company,* 247 F.2d 681 (5th Cir.1957).

That case involved a suit by a gas pipeline company to collect rate increases on gas that it had sold to a gas service company. In view of the gas service company's appeal concerning the rate increases, a stay of the suit was held to be in the trial judge's discretion. This case is different. The rule set forth in *Runyon* remains the law of the land until overruled, *Roebuck v. Drexel University,* 852 F.2d 715 (3d Cir. 1988), and this court will proceed with the § 1981 claim.

IT IS THEREFORE ORDERED that summary judgment be granted in plain-

tiff's favor that defendant's SOPs created implied contract rights;

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment is granted with respect to plaintiff's claims for breach of implied contract relating to notice of bidding penalty, access to grievance procedures, and the covenant of good faith and fair dealing;

IT IS FURTHER ORDERED that the defendant's motion to stay the § 1981 count is denied.