Marie SANCHEZ, Appellant (Plaintiff),

v.

**LIFE CARE CENTERS OF AMERICA, INC., Appellee (Defendant).**

No. 92–25.

Supreme Court of Wyoming.

July 15, 1993.

Bernard Q. Phelan, Cheyenne, for appellant.

Kate M. Fox, Cheyenne, for appellee.

Before MACY, C.J., CARDINE, GOLDEN and TAYLOR, JJ., and BROWN, J. (Retired).

BROWN, Justice (Retired).

This case is a wrongful employee termination action brought by appellant Marie Sanchez, against appellee Life Care Centers of America, Inc. (Life Care). The district court granted summary judgment against appellant.

The issues on appeal are:

### I.

Whether the disclaimer contained in the Handbook of Employment Guidelines is sufficiently conspicuous to maintain the at-will nature of employment.

### II.

Whether this Court recognizes the doctrine of promissory estoppel as a cause of action in wrongful termination cases, and, if so, whether the conspicuous disclaimers contained in the Life Care Employment Guidelines prevent its application in this case.

We reverse and remand.

During a portion of 1990, appellant was employed by Life Care. At the time of her employment, she was issued a Handbook of Employment Guidelines. This handbook contained a "handbook disclaimer."

Detailed facts surrounding appellant's termination are disputed, but were not considered by the trial court and are not at issue in this appeal, nor do they appear in the record. However, we do know that appellant called in on July 20, 1990, to inform her employer that she could not come in the following day due to fatigue; that she was told to "forget coming in"; and that she was removed from the work schedule, which effectively terminated her employment.

The district court's order granting summary judgment was filed December 23, 1991. The court ruled in favor of Life

Care, holding that (1) the handbook disclaimer was conspicuous as a matter of law and did not modify the at-will status of appellant's employment; and (2) that no majority of the Wyoming Supreme Court had recognized a cause of action based on promissory estoppel in wrongful termination cases in Wyoming and, therefore, appellant did not state a claim upon which relief could be granted.

Our standard of review in cases involving the granting of summary judgment has been stated many times. W.R.C.P. 56(c) provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987) (citations omitted), we said:

> A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden.

When the issue on review is the construction and interpretation of a contract, the standard of review is further stated as follows:

> Normally, the construction and interpretation of a contract is for the court as a matter of law. If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact.

*McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 988 (Wyo.1991) (quoting *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 706 (Wyo.1985)).

■ In Wyoming, employment is presumed to be at-will; however, "[a] handbook may change the employer's unfettered right to discharge an employee." *Leithead v. American Colloid Company*, 721 P.2d 1059, 1062 (Wyo.1986); *Alexander v. Phillips Oil Company*, 707 P.2d 1385 (Wyo.1985); *Mobil Coal Producing, Inc.*, 704 P.2d 702.

The disposition of this case depends on construction of the purported disclaimer along with other provisions in the Handbook in the nature of disclaimers. "The Handbook of Employment Guidelines" given to appellant when she was employed contained a disclaimer on page 2 as follows:

### HANDBOOK DISCLAIMER

The guidelines outlined in this handbook are for the mutual benefit of this nursing center and its associates. These guidelines include methods of procedure which, when implemented, can effectively enhance the management of a successful nursing center. The executive director and supervisors must therefore reserve all the customary rights of management, including the right to supervise and control all operations; direct all work; interpret, change or cancel all personnel policies with or without notice; hire, schedule, terminate, layoff, transfer, promote, reward, discipline, or otherwise manage associates and select the manner, method and means of doing so. This handbook is not a contract and contains no promises, guarantees, representations, agreements, or warranties upon which any prospective, current or prior associates of this nursing center can reasonably maintain or create any expectations of such.

Life Care points to provisions in the handbook disclaimer to support its contention:

The executive director and supervisors * * * reserve * * * the right * * * to * * * interpret, change or cancel all personnel policies *with or without notice;* hire, schedule, *terminate,* layoff, transfer, promote, reward, *discipline,* or otherwise manage associates *and select the manner, method and means of doing so.* This handbook is not a contract and *contains no promises, guarantees, representations, agreements, or warranties* * * *. [Emphasis added.]

The "Handbook of Employment Guidelines" contains twenty-five numbered pages and five unnumbered pages, including the "Table of Contents." The contents were in fine print—topic headings were in larger print and bold-faced. Under the caption "Discipline and Termination," thirty-nine examples of unacceptable employee conduct are listed. The paragraph at the top of page 21 cautions:

The list that follows, though not all-inclusive, gives examples of violations of the nursing center principles of conduct which may subject the offender to disciplinary action. Such action includes, but is not limited to, warning notices, suspension and/or discharge.

Under the caption "Disciplinary Procedures" of the handbook, a four-step progressive discipline approach is outlined which the employer will "generally" apply. The first paragraph states that "[t]he nursing center may, depending on the severity of the offense terminate an associate after the first offense." After listing the four disciplinary steps, the handbook further states:

This will be our usual and preferred process for administering discipline. However, conduct of any type which causes the center to lose confidence in your ability to perform adequately your assigned job may result in immediate discharge.

The handbook contains a tear-out "Acknowledgment Card," in which the employee states that she will familiarize herself with its contents. Appellant signed her acknowledgment card December 4, 1989.

In *McDonald,* 820 P.2d at 986, this court adopted the rules set forth in *Jimenez v. Colorado Interstate Gas Company,* 690 F.Supp. 977, 980 (D.Wyo.1988) (citations omitted) which state:

For this disclaimer to be effective against plaintiff, it must be conspicuous. Whether a disclaimer is conspicuous is a question of law. * * *

Defendant was not obligated to write SOPs and to post them in an employee area. Because it has done so, the court is now faced with a "strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." These policy reasons help explain why an effective disclaimer must be conspicuous. The disclaimer in question is not set off in any way that would attract attention. It falls under the heading "GENERAL INSTRUCTIONS" and the subheading "CONTENTS." Nothing is capitalized that would give notice of a disclaimer. The type size equals that of other provisions on the same page. No border sets the disclaimer apart from any other paragraph on the page. The disclaimer is not conspicuous. Therefore, this court grants summary judgment that the SOPs create implied contract rights.

In *McDonald,* 820 P.2d at 986, we quoted with approval *Woolley v. Hoffman–La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985), *mod.,* 101 N.J. 10, 499 A.2d 515 (1985). In *Woolley,* the court set out an example of what need be done if the employer does not want the manual to be capable of being construed by the court as a binding contract. The court said:

It would be unfair to allow an employer to distribute a policy manual that makes the workforce believe that certain promises have been made and then to allow the employer to renege on those promises. What is sought here is basic honesty: if the employer, for whatever reason,

does not want the manual to be capable of being construed by the court as a binding contract, there are simple ways to attain that goal. All that need be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

*Woolley,* 491 A.2d at 1271.

In *Jimenez,* 690 F.Supp. at 980, the court observed that "[u]nder Wyoming decisions, handbooks that list misconduct that could result in discharge imply that cause is required." (citing *Leithead,* 721 P.2d at 1063; and *Parks,* 704 P.2d at 705.

In *Parks,* 704 P.2d at 706 (citations omitted), this court outlined the procedure for resolving ambiguous employee handbooks, stating:

Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. * * * If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a mixed question of law and fact.

In the case before us, the disclaimer is in the "Introduction" section of the handbook, subtitled "Handbook Disclaimer." The language of the disclaimer speaks in terms of "mutual benefit," management "enhancement" and the right to supervise. It does not say that the employer retains the right to deviate from the terms of the handbook at its own caprice. It does not say that the employer remains free to change wages and all other working conditions without consulting the employee or obtaining his agreement, nor that the employer retains absolute power to fire anyone with or without good cause. Instead, there is an inference in the disclaimer that it is a guide for "mutual benefit," that certain procedures contained therein would be "implemented" to "enhance the management of a successful nursing center," and that the "customary rights" of the employer were set forth in the handbook.

■ The operative language in the disclaimer is not bold lettered; it is buried in introductory paragraphs. It is not designed to attract attention and is stated in language which does not tell the employee what he needs to know. We are reluctant to specify language and the placement of a disclaimer in order that it be effective. Perhaps this could be accomplished in numerous ways. Additionally, the handbook listed misconduct that could result in discharge, thus implying that cause is required. *Jimenez,* 690 F.Supp. at 980. Detailing stages of progressive discipline results in a further implication that cause is required to discharge. Most likely a lawyer would have told appellant that, under her employment arrangement, she could be discharged without cause. An employee should not have to hire a lawyer to learn that.

In summary, we determine that the disclaimer was not physically conspicuous and its contents were ambiguous in that there was language that inferred that Life Care intended to modify the at-will employment to an employment which could only be terminated for cause. Furthermore, listing numerous types of misconduct that could result in termination coupled with progressive stages of discipline inferred that cause is required to discharge. Our resolution of the first issue in this case makes it unnecessary to address the second issue.

The meaning and effect of the employment relationship in this case, a mixed question of law and fact, remains unresolved. Therefore, we must reverse summary judgment. The case is remanded to the trial court for determination of whether the employee handbook modified the em-

ployment relationship from one terminable at will to one terminable only for cause.

CARDINE, J., files a dissenting opinion in which TAYLOR, J., joins.

CARDINE, Justice, dissenting, with whom TAYLOR, J., joins.

This is yet another case to come before us in which an employer has tried to satisfy the court's secret concept of an adequate disclaimer in an employee handbook. The employer was, in essence, told: "Sorry, you failed again—but keep trying—you may get it right." Why don't we just tell litigants what is "right?"

I dissent because the disclaimer in this employee handbook was clear, explicit and adequate to inform any reasonable employee that the at-will employment relationship was preserved. I dissent also because the court fails once again to inform an employer what is acceptable as an effective disclaimer in an employee handbook.

The court has been liberal in holding that an employee handbook can create a contract which will eliminate the at-will status of the employee: (a) *Alexander v. Phillips Oil Co.*, 707 P.2d 1385, 1388 (Wyo.1985); (b) *Leithead v. American Colloid Co.*, 721 P.2d 1059, 1063 (Wyo.1986); (c) *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 708 (Wyo.1985); (d) *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866, 870 (Wyo. 1990), *reh'g granted* 820 P.2d 986, 990 (Wyo.1991).

In *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 708 (Wyo.1985), we affirmed an award of damages to an employee because the employer did not substantially comply with its handbook when it terminated the employee. In *Parks* the court found that the provisions of the handbook altered the employer's unfettered right to discharge an employee any time, without cause. *Parks*, 704 P.2d at 707.

In *McDonald v. Mobil Coal Producing, Inc. (McDonald I)*, 789 P.2d 866, 870 (Wyo. 1990), the employee manual listed causes for discipline and a five-step disciplinary process. The employment application signed by the employee stated:

I agree that any offer of employment, and acceptance thereof, does not constitute a binding contract of any length, and that such employment is terminable at the will of either party, subject to applicable state and/or federal laws.

789 P.2d at 867–68. The majority found that the effect of the disclaimer in the revised handbook was that there was not a contract between the parties but that, nevertheless, promissory estoppel applied. On appeal, we reversed summary judgment for the employer. *McDonald I*, 789 P.2d at 870.

The court granted rehearing in *McDonald I*, and in *McDonald v. Mobil Coal Producing, Inc. (McDonald II)*, 820 P.2d 986, 990 (Wyo.1991), held that summary judgment should be reversed to determine whether Mobil's course of conduct created manifestations of Mobil's assent to contract that were sufficient to create reasonable reliance by the employee. In addition to the disclaimer above recited, in *McDonald I* the handbook also stated:

[This handbook] is not a comprehensive policies and procedures manual, nor an employment contract.

I dissented in *McDonald I* and *McDonald II* on much the same basis that I must dissent from this decision. *McDonald I*, 789 P.2d at 871 (Cardine, J., dissenting); *McDonald II*, 820 P.2d at 992 (Cardine, J. dissenting, with whom Thomas, J., joins.). In both *McDonald I* and *II*, Mobil disclaimed creating a contract. *McDonald I*, 789 P.2d at 869; *McDonald II*, 820 P.2d at 988–89. The disclaimer in this case is even more detailed, clear as to intent, and specific. It reads as follows:

The guidelines outlined in this handbook are for the mutual benefit of this nursing center and its associates. These guidelines include methods of procedure which, when implemented, can effectively enhance the management of a successful nursing center. The executive director and supervisors must therefore reserve all the customary rights of management, including the right to supervise and control all operations; direct all work; interpret, change or cancel all per-

sonnel policies with or without notice; hire, schedule, terminate, layoff, transfer, promote, reward, discipline, or otherwise manage associates and select the manner, method and means of doing so. This handbook is not a contract and contains no promises, guarantees, representations, agreements, or warranties upon which any prospective, current, or prior associates of this nursing center can reasonably maintain or create any expectations of such.

It appears on page two of the handbook. It is conspicuous. It cannot be misunderstood. Nevertheless, the court found that the above disclaimer in this case was insufficient. I believe the court, in fairness to litigants, should now say what is sufficient. The most the court has said thus far is that the disclaimer must be conspicuous under the standards adopted in *Jimenez v. Colorado Interstate Gas Co.*, 690 F.Supp. 977, 980 (D.Wyo.1988), and that even if the disclaimer is conspicuous, it still may be negated by a course of conduct which implies that cause is required in order to terminate an employee. *McDonald II*, 820 P.2d at 990–91.

Our rulings discourage employers from providing their employees with a manual. This deprives employees of useful information about company policies. The dilemma businesses face was well described in this law review article:

> Employers who have large numbers of employees or who have complicated company policies find themselves in a precarious position. If these employers do not promulgate any sort of policy manual, they may be required to formulate employee policy on an ad hoc basis and face administrative chaos. Conversely, if they do issue a manual and comply with its procedures to such a degree that their employees reasonably expect them to continue to do so in the future, they may be subjected to unintended contractual liability.

Michael W. Wallace, *"Employee Manuals as Implied Contracts: The Guidelines That Bind,"* 27 Tulsa L.J. 263, 263–64 (1991) (hereinafter: *"Employee Manuals as Implied Contracts"*).

My other concern with discouraging employers from issuing manuals is that employees will be deprived of useful safety information that is sometimes contained in the employee manuals. Without a handbook, employees are not apprised of communication processes within the company that are important for maintaining a positive work environment. The time is now for the court to clearly state what would be sufficient, not just continue ruling ad hoc that the particular disclaimer before the court is insufficient.

I would adopt a straight-forward rule that gives clear guidance to employers. One treatise gives employers this advice:

> Disclaimers are most likely to survive a legal challenge if they are clearly stated and conspicuously placed in an appropriate document, and if the employee acknowledges receipt and review of the document including the disclaimer. Employers may also want to provide in the disclaimer itself that the disclaimer may only be modified in writing by management. Employers that include disclaimers in their policies are well-advised to carefully review the terms and conditions of employment, including disclaimers, with new employees and to review company policies, including the limitations on the enforceability of those policies, periodically with employees.

Alfred G. Feliu, *Primer on Individual Employee Rights,* 23 (1992).

There are disclaimers in use today that effectively continue the at-will status of employees. Sears, Roebuck and Company have used this disclaimer:

> In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck and Co., and my employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company or myself. I understand that no store manager or representative of Sears, Roebuck and Co., other than the president or vice-president of the Company, has any authority to enter into any agreement for

employment for any specified period of time, or to make any agreement contrary to the foregoing.

*Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 456 (6th Cir.1986). This disclaimer has been repeatedly upheld.

Courts repeatedly uphold disclaimers in employee handbooks. *See e.g., Preston v. Champion Home Builders Inc.*, 187 A.D.2d 795, 589 N.Y.S.2d 940, 941–42 (1992); *French v. Foods, Inc.*, 495 N.W.2d 768, 770 (Iowa 1993). Not only have other courts accepted handbook disclaimers, but they have accepted disclaimers that are substantially less detailed than disclaimers this court has rejected. *See Preston*, 187 A.D.2d 795, 589 N.Y.S.2d at 941 (manual contained statement "the company retains the right to terminate your employment at any time, with or without cause or notice."). The disclaimer in *Preston* was accepted by the court even though the manual also listed causes for discipline. 589 N.Y.S.2d at 941–42. Other courts strive even more to preserve the employment at-will presumption. In Texas, for example, an employee manual does not impliedly modify at-will status, and only an express modification of at-will status is recognized by Texas courts. *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 539 (Tex.App. 1982); discussed in *"Employee Manuals as Implied Contracts"* at 273. Texas courts follow the view that employer manuals are issued by employers in order to provide their employees with information about company policy. The manuals are issued to promote administrative efficiency and without any intention to limit their own conduct. *"Employee Manuals as Implied Contracts,"* at 273–74 n. 61.

The court is moving along a path which will lead to the eventual demise of the employment at-will presumption. The majority opinion states: "In Wyoming, employment is presumed to be at-will; however, '[a] handbook may change the employer's unfettered right to discharge an employee.'" Maj. op. at 1257 (citations omitted). The majority does not then proceed through its analysis by presuming that Sanchez's employment was at will, rather the majority presumes there was a contract unless the disclaimer was effective. The majority's willingness to read every handbook as a contract, despite a disclaimer, renders the at-will presumption hollow.

Unless the court clearly defines what is a legally sufficient handbook disclaimer, then a handbook will become a contract with every employee. By not making the law clear, the court puts employers in a position wherein the safer practice will be to issue no employee handbook. The course now being pursued by the court only creates confusion and continued litigation.