**Dudley PENDLETON and Thomas R. Allen, Plaintiffs–Appellees,**

v.

**CONOCO INC., Defendant–Appellant.**

**No. 93–8012.**

United States Court of Appeals, Tenth Circuit.

April 26, 1994.

---

Frank D. Neville, Scott E. Ortiz and Richard L. Williams of Williams, Porter, Day & Neville, P.C., Casper, WY, for defendant-appellant.

Harold F. Buck of Buck Law Offices, Cheyenne, WY, for plaintiffs-appellees.

Before ANDERSON, Circuit Judge and McWILLIAMS, Senior Circuit Judge and SHADUR, Senior District Judge.*

SHADUR, Senior District Judge.

Thomas R. Allen ("Allen") and Dudley Pendleton ("Pendleton") have sued their former employer Conoco, Inc. ("Conoco"), each asserting that he was wrongfully terminated in breach of his employment contract and seeking lost wages and other consequential damages. After a jury found in favor of both ex-employees, Conoco brought this appeal. It asserts several reasons that the district court should have granted its motions for a directed verdict.[1] We affirm the decision below as to Pendleton and reverse as to Allen.

*Factual Background*

For a number of years before Conoco entered the scene, both Allen and Pendleton had been employed by Truck Terminals, Inc. ("Truck Terminals"), a company engaged in

---

\* The Honorable Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

1. Although the trial took place in January 1993, more than a year after Fed.R.Civ.P. ("Rule") 50(a) and 50(b) were amended to supplant the long-familiar motions for a directed verdict by motions for judgment as a matter of law, Cono-co's counsel (like many other lawyers) have adhered to the outmoded terminology. Old habits die hard. We have perforce been required to refer to Conoco's motions in the same way as they were presented to the district court, but this opinion adheres to the correct new terminology wherever possible (with apologies for any resulting confusion).

the business of owning and operating truck stops in Cheyenne, Wyoming. Allen, whose tenure with Truck Terminals dated back to 1959, had risen to the position of retail manager charged with overseeing three of the company's truck stops. Pendleton worked at one of those facilities beginning in 1985, first as an island attendant and then later as a shift foreman reporting to Allen.

Conoco bought a number of the Truck Terminals truck stops in December 1989. Shortly after that purchase Conoco District Manager Dan Fleck ("Fleck") called a meeting of all former Truck Terminal employees at which he explained that although Conoco was under no obligation to do so under the express terms of the purchase agreement, it had elected (in accordance with its customary policy) to treat all employees as if they had always worked for Conoco in terms of their seniority and previous positions. Accordingly Pendleton stayed on as shift foreman and Allen retained his post as manager of the facility, subordinate to District Manager Fleck.

### Thomas Allen

Allen's relationship with Conoco enjoyed only a brief honeymoon. Conoco's management approach was very different from that of its predecessor, and Allen testified that he grew increasingly disenchanted with what he considered to be an oppressive load of paperwork requirements. As a result Allen was counseled repeatedly by his superior Fleck for failing to comply with Conoco's procedures: He was censured for poor performance first on February 14, 1990 and then on March 13, March 21 and April 4, and he signed off on several written counseling forms. At the April 4 meeting Allen was placed on 30-day probation pending "tremendous improvements" (Conoco App. 198). Although he was counseled by Fleck yet again on April 26, Allen weathered that probationary period.

Within a few months, however, problems erupted again—on September 28 Allen was again reprimanded in writing for numerous violations of company policies. And once again he was placed on a short-term probation, this one originally set to expire October 15 (when his continued noncompliance then led Conoco to extend the period until October 31). By their terms the written probation documents told Allen that failure to shape up could cost him his job. Finally on December 12 a group of Conoco executives higher up in the chain of command decided that termination was indeed warranted, and Allen was fired.[2]

About three weeks after Conoco let him go, Allen landed a new job with HRM Enterprises ("HRM"), a competing truck stop operator in Cheyenne. Though his new annual salary of $35,000 was somewhat below the $36,960 he had been earning with Conoco, his testimony at trial reflected that he was required to work fewer hours (Vol. II at 165–66, Conoco App. 103–04[3]). Allen began his employment with HRM on January 7, but less than three weeks later (on January 25) he suffered a heart attack that kept him away from his new job until February 25, when he was able to return to work in a limited capacity. On his doctor's orders Allen reduced his working hours, but although his new employer evidently attempted to accommodate him he was eventually fired on May 15. As Appellees' Br. 7 admits, "the reason for his terminated [sic] from HRM Enterprises was that 'I could not put in the hours required to do the job.'"

### Dudley Pendleton

Pendleton's stint with Conoco came to a much more abrupt end. After a March 1990 audit had revealed a $4,000 discrepancy in the truck stop's inventory, Conoco sent Terry Beene ("Beene"), a representative from its

---

**2.** One of Conoco's arguments on appeal is that the trial court erred in failing to grant its motion for directed verdict on the basis that Allen was terminated for cause as a matter of law. In response Appellees' Br. 7 explains:

> Mr. Allen indicated that the reason he was not able to get the job done as desired was that he was not given the assistance needed to accomplish what he was asked to do. (R. Vol. II, p.

138). In fact two of his assistants were eliminated even though his paperwork requirements increased.

Because we find that Allen was an employee at will, we need not reach that question.

**3.** All roman numeral references are to volumes in the trial court record.

Security Department, from Houston to Cheyenne to investigate. On March 27 Beene convened a meeting with Pendleton and Fleck, and Conoco concedes that Pendleton was able to explain to everyone's satisfaction that there was no impropriety involved in the cash register deficit. Accounts of what then happened at the meeting vary widely. Conoco claims that Pendleton lost his temper without any reasonable provocation and proceeded to heap verbal abuse on the other two. For his part Pendleton agrees that a "heated discussion" took place, but the way Appellees' Br. 6 summarizes the episode, "Beene tried to incite Pendleton to get mad and thus give the employer a basis to terminate him."

From the jury's verdict in Pendleton's favor, it is plain that it credited his version. In any event the litigants agree that Pendleton said this during the course of the meeting (Vol. I at 128, Conoco App. 38 [Fleck's testimony]; Vol. I at 207, Conoco App. 62 [Pendleton's testimony]):

When I get back from my vacation, I'm giving you my two-weeks' notice.

Here is Pendleton's account of what happened next (*id.*)—an account that the jury was of course entitled to credit:

And Dan jumped run over to where I was. He was surprised. He was surprised. It caught him by surprise. He went to protest, and Mr.—

Q. Beene?

A. Mr. Beene grabbed Dan by his arm and told him, Dan, to be quiet. And he said, "So you just quit?" I said, "No, I didn't quit. I said I'm going on my two-weeks' vacation. I have it already scheduled. When I come back I will give you my two-weeks' notice." Mr. Beene started all over again like he had earlier. He said, "You just quit." I said, "No, I didn't." And this went on for some time. And I told Mr. Beene I did not quit. And finally I asked him, "Can I go home?" When he

told me yes, I just left. I needed to get some sleep. I had to [be] back in about four or five hours.

Pendleton then left the meeting. Beene called Conoco's corporate headquarters in Houston, after which he made the decision to accept what he contended was Pendleton's resignation on the spot. When Pendleton returned to the truck stop for his next shift later that day, Beene told him that the company had chosen to waive the two-week notice period and wanted him out without further delay. Though Pendleton continued to maintain that he had not in fact resigned, he had no choice other than to leave (Vol. I at 208–11, Conoco App. 63–65).

### Proceedings Below

Allen and Pendleton sued Conoco[4] for the alleged breach of their respective employment contracts. Their case went to trial before a jury in Cheyenne in early January 1993. At the close of plaintiffs' case Conoco moved for a directed verdict as to Allen on four grounds, asserting:

1. Allen was an employee at will as a matter of law.

2. Allen suffered no damages or, alternatively, his damages should have been offset by the amount that he could have earned had he been able to continue with HRM.

3. Allen was terminated by Conoco for cause as a matter of law.

4. Promissory estoppel is not a viable basis for an action under Wyoming law.

As to Pendleton, Conoco advanced only the single contention that Pendleton had voluntarily resigned. Conoco's motion was denied by the district court in its entirety, as was a similar motion renewed by Conoco at the conclusion of all of the evidence.[5]

At the end of the four-day trial the jury returned a verdict in favor of both ex-em-

---

4. Initially suit was brought against another defendant affiliated with Conoco, Kayo Oil Company. That was changed by the filing of an Amended Complaint naming Conoco as the sole defendant. In any event the change in parties did not destroy diversity of citizenship, which was the predicate for federal jurisdiction.

5. As to the promissory estoppel question, Conoco preserved the issue by objecting to the jury instruction describing the elements of such a claim.

ployees. Judgment was entered on January 12 awarding Allen $149,583 and Pendleton $59,180 in damages. Conoco then filed this appeal.

### *Was Allen an Employee at Will?*

 When he went to work for Conoco, Allen was given a copy of Conoco's Employee Manual. It contained these provisions (for our purposes "Kayo Oil Company" means Conoco):

## PERSONNEL POLICIES AND PROCEDURES

Termination

*Purpose*

To provide guidelines for handling terminations under various circumstances.

*General*

It is the policy of Kayo Oil Company to terminate any employee at any time when it is evident that his or her performance does not meet acceptable standards or when it is clear that no work is available for the individual. However, it is important to the Company and to the employee that all terminations be handled equitably to protect both the employee and the Company.

*Policy*

A. *Voluntary Terminations.* Store employees who resign are expected to give the Company the maximum possible notice—normally, advance notice should be a minimum of two weeks.

B. *Involuntary Terminations.* All involuntary terminations (termination for cause, i.e., shortage, violation of policy, etc.) must be reviewed in advance and must have the concurrence of the District Manager and/or Group Manager. All involuntary terminations of store employees with more than one year of service must have the additional approval of the Area Manager. All involuntary terminations of store employee [sic] with more than three years of service must have the additional approval of the Division Manager. All involuntary terminations of store employees with more than ten years of service must have the

additional approval of the Vice President–Operations.

At the time he received the handbook, Allen signed a "New Employment Agreement" containing this disclaimer (D.Ex. GGGG, Conoco App. 233):

> I understand and hereby agree that the Company may terminate my employment at any time without notice and that any wages due me will be for such time accrued at the date of discontinuing my service with the Company.

 In Wyoming (as in most other jurisdictions) employment is generally presumed to be at will: Either the employer or employee may terminate the employment relationship "at any time, for any reason or for no reason at all" (*Lincoln v. Wackenhut Corp.*, 867 P.2d 701, 703 (Wyo.1994)). If that doctrine applies here Allen's case is at an end—there can be no "wrongful" termination where the employer has an unfettered right to fire its employees. Hence we must decide whether the provisions of Conoco's handbook gave Allen any greater rights than those of an at-will employee.

In a series of cases beginning with *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 706–07 (Wyo.1985), the Wyoming Supreme Court has recognized that certain provisions in an employee handbook may indeed give rise to implied assurances of continued employment and hence to an implied-in-fact employment contract. As that court most recently stated in *Lincoln,* 867 P.2d at 703 (citing *Sanchez v. Life Care Centers of America, Inc.,* 855 P.2d 1256, 1257 (Wyo.1993)):

> In particular, a systematic discipline procedure or other language in an employee handbook implying termination may be for cause only may defeat the rebuttable presumption that employment is at will.

On a literal reading of the already-quoted "Involuntary Terminations" provision of Conoco's handbook, it does not restrict such firings to "for cause" terminations. Instead it appears to prescribe only the internal corporate procedures for authorizing any "for cause" termination, with the level of requisite corporate approval varying as a function of the amount of seniority the employee had

accrued. What is more critical for purposes of Allen's case is whether (as has been found true in some Wyoming cases) any different light is cast on the question by the terms of the disclaimer that Allen signed.

On that score several of the recent Wyoming cases discussing handbook-based contract claims have turned on the conspicuousness vel non of the disclaimer as a precondition to its enforceability (see, e.g., *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 988–89 (Wyo.1991) and *Sanchez*, 855 P.2d at 1257–59 (Wyo.1993)).[6] This case, however, presents no such question, for as part of the Order on Final Pretrial Conference (Conoco App. 23, 30) District Judge Brimmer issued this ruling:

> The plaintiffs made an oral motion that the disclaimer claimed in the New Employment Agreement signed by plaintiff Allen be found invalid as being inconspicuous. The Court finds that the disclaimer is conspicuous.
>
> THEREFORE IT IS
>
> ORDERED that the plaintiffs [sic] oral motion that the disclaimer is invalid be, and the same hereby is, DENIED.

Because that ruling has not been appealed, it has become the law of the case.

■ In light of that holding, the sole question for our determination as to Allen is whether that concededly conspicuous disclaimer harbors some ambiguity that would somehow turn the apparently clear meaning of the "Involuntary Terminations" provision into a question for the jury. It is of course conventional wisdom that the construction and interpretation of a contract is a question of law for the court (*Parks*, 704 P.2d at 706)—one that we are entitled to decide de novo (*Stegall v. Little Johnson Assoc., Ltd.*, 996 F.2d 1043, 1048 (10th Cir.1993)). In this instance we find no such ambiguity in the disclaimer. Indeed, it would place an undue strain on the English language to read a provision that expressly allowed Conoco to terminate Allen "at any time without notice" as though Conoco had to show good cause for

its decision as a precondition to any such instantaneous no-notice termination. We are not the first Court of Appeals to confront this question—*Crum v. American Airlines, Inc.*, 946 F.2d 423, 427–28 (5th Cir.1991) has upheld an at-will determination based on nearly identical disclaimer language. We agree with *Crum*.

Because the disclaimer signed by Allen was both conspicuous and unambiguous, Wyoming law mandates the conclusion that the district court erred in failing to grant Conoco a judgment as a matter of law on the issue of its liability for terminating Allen. It will be recalled that the standard for what used to be termed a directed verdict (as n. 1 reflects, now an order for judgment as a matter of law under Rule 50(a) or 50(b)) is identical to the standard for summary judgment under Rule 56 (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). And here is what the Wyoming Supreme Court has explained in *Lincoln*, 867 P.2d at 704 (employing the comparable state law summary judgment standard):

> Applying the teachings of *McDonald II* and *Sanchez*, the summary judgment in favor of Wackenhut on the breach of contract claim will be affirmed if we determine, as a matter of law, that the language of the Wackenhut handbook provision disclaiming the formation of any implied in fact contract of employment is sufficiently conspicuous and unambiguous to preserve an employment at will relationship.
>
> Lincoln does not contend that she was hired as other than an employee at will. Instead, she argues that the discipline procedure of the Wackenhut handbook constituted a term of an implied in fact contract of employment which modified her at will status to that of an employee subject to termination for cause only and with certain procedural rights. However, if the Wackenhut handbook disclaimer is conspicuous and unambiguous as a matter of law, then it would constitute an effective notice to

---

**6.** In a turnabout of the usual *Erie v. Tompkins* approach, the Wyoming Supreme Court has chosen to evaluate conspicuousness under the standards first articulated by a federal court—in this instance in *Jiminez v. Colorado Interstate Gas Co.*, 690 F.Supp. 977, 980 (D.Wyo.1988) (see *McDonald*, 820 P.2d at 988; *Sanchez*, 855 P.2d at 1258).

Lincoln that Wackenhut did not promise to abide by the discipline procedure in terminating at will employees and any reliance would have been unreasonable.

In summary, Conoco was entitled to a judgment against Allen as a matter of law because he was an employee at will, thus defeating any claim of wrongful termination. Accordingly the judgment and award of damages in Allen's favor are reversed.[7]

### Did Pendleton Resign?

 Pendleton's case differs sharply from Allen's because Conoco was unable to assert the same employment-at-will argument.[8] Nor has Conoco preserved any contention either (1) that it had cause to terminate Pendleton or (2) as to the size of the jury's verdict in Pendleton's favor if he was in fact entitled to any verdict at all. Instead, as we have stated earlier, Conoco's sole argument on appeal is that Pendleton's statement to Fleck and Beene ("When I get back from my vacation, I'm giving you my two-weeks' notice") was effective as a current resignation— one that Beene had the right to accept immediately. Conoco claims that conclusion was required as a matter of law, so that the lower court's denial of its motion for directed verdict was reversible error.

We cannot agree. We have already set out Pendleton's testimony in that respect. It posed a classic question of fact for resolution by a jury as to whether Pendleton's statement reflected a present resignation, as opposed to a non-binding declaration of future intent. To be sure, Beene denied that the exchange to which Pendleton testified had taken place, but the jury was certainly entitled to credit Pendleton's version. And when it did, the claimed "resignation" became a firing as to which the jury could legitimately

find Conoco lacked just cause—and hence a wrongful termination.

On the state of the record before us, it would have been improper for the district judge to withdraw the matter from the jury and to rule in Conoco's favor as a legal matter. We must uphold the jury's award of damages in Pendleton's favor.

### Conclusion

We reverse the district court's denial of Conoco's motion for directed verdict as to Allen and order the entry of a judgment in favor of Conoco and against Allen as a matter of law. We affirm the verdict in Pendleton's favor against Conoco.

---

7. That makes it unnecessary to address the other issues posed by Conoco's appeal targeting the verdict in Allen's favor. As to one of those issues, it may be worth noting parenthetically that the sequence of Wyoming cases in this area had left the promissory estoppel question in some doubt (see *Sanchez,* 855 P.2d at 1259, expressly declining to address that issue)—a doubt that appears to have been resolved by the most recent decision in *Lincoln,* 867 P.2d at 703.

8. In response to our question at oral argument, Conoco's counsel said that Conoco had simply been unable to locate any employment agreement signed by Pendleton. That meant that the trial evidence did not include any disclaimer by Pendleton of the same type that Allen signed.