52 F.3d 858
 31 Fed.R.Serv.3d 1258
 Marjorie HATFIELD, Plaintiff-Appellant,
v.
The BOARD OF COUNTY COMMISSIONERS FOR CONVERSE COUNTY, John
Pexton, John Rider, M.V. Lehner, as the present
Commissioners of Converse County; Ernie Orrell, Converse
County Treasurer; Sherry Shillenn, Converse County Deputy
Treasurer, Defendants-Appellees.
 No. 93-8094.
 United States Court of Appeals,
Tenth Circuit.
 April 11, 1995.
 
 Bruce S. Asay, Cheyenne, WY, for appellant.
 Dale W. Cottam (Gary R. Scott, with him, on the briefs) of Hirst & Applegate, Cheyenne, WY, for appellees the Board of County Com'rs for Converse County, John Pexton, John Rider, M.V. Lehner.
 Scott E. Ortiz (Patrick J. Murphy, with him, on the briefs) of Williams, Porter, Day & Neville, Casper, WY, for appellee Ernie Orrell, Converse County Treasurer.
 Patrick Dixon, Dixon and Despain, Casper, WY, for appellee Sherry Shillenn.
 Before TACHA, McKAY, Circuit Judges, and HANSEN,d District Judge.
 TACHA, Circuit Judge.
 
 
 1
 Plaintiff Marjorie Hatfield brought suit in federal court against defendants after she was terminated from her employment as a clerk in the Treasurer's Office of Converse County, Wyoming. She has asserted five separate claims: (1) denial of due process; (2) breach of contract; (3) breach of implied covenant of good faith and fair dealing; (4) negligent supervision; and (5) promissory estoppel. The district court granted defendants summary judgment on each of plaintiff's claims. This court has jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.I
 
 
 2
 Converse County hired plaintiff to work in its Treasurer's Office in December 1988. Plaintiff initially worked in the auto license department, but she later transferred to the tax department. Her duties in the tax department apparently required computer skills that she initially lacked, causing her problems in completing her tasks. Moreover, plaintiff's co-workers in the tax department allegedly isolated her by excluding her from conversations and training activities, closely monitoring her performance, and reporting to management her minor deviations from office policy.
 
 
 3
 In October 1991, several of plaintiff's co-workers complained to the County Treasurer, Jim Read, about plaintiff's job performance. Mr. Read reprimanded plaintiff and placed her on probation. According to plaintiff, Mr. Read assured her that she would not be fired. But two days later, on October 25, plaintiff received a formal letter of termination. She had no written contract of employment with the County.
 
 
 4
 After receiving the termination letter, plaintiff initiated a formal Grievance Board proceeding against Mr. Read in accordance with the Converse County personnel policy manual (the "policy manual"). Plaintiff alleged that she had been harassed and falsely accused by her co-workers and that she was terminated in contravention of Mr. Read's express assurances that she would not be fired.
 
 
 5
 The County placed plaintiff on administrative leave with pay while the hearing was pending. The hearing began on January 3, 1992. Midway through the proceedings, the hearing was suspended to allow the parties to settle the matter. Plaintiff contends that the hearing was suspended after County officials assured her that she would regain a position with the County. The hearing was suspended for a period not to exceed six weeks.
 
 
 6
 According to plaintiff, on February 13 John Pexton, a County Commissioner and Chairman of the Grievance Board, assured plaintiff that she would be reinstated within a week and that she would return to work in the Treasurer's office. But on February 24, plaintiff received a termination letter from the newly appointed treasurer, Ernie Orrell. Mr. Orrell had reviewed plaintiff's employment file, discussed plaintiff's performance with her co-workers, and decided to terminate her employment. Plaintiff then sought to reopen her Grievance Board hearing, but the County dismissed the proceedings.
 
 
 7
 Plaintiff brought suit against defendants in federal district court. She asserted four state law claims--breach of contract, breach of implied covenant of good faith and fair dealing, negligent supervision, and promissory estoppel--and one claim based on federal law--that she was denied procedural due process in violation of 42 U.S.C. Sec. 1983. Defendants moved for summary judgment. The district court granted defendants' motion with respect to each of plaintiff's claims, and Ms. Hatfield now appeals.
 
 II
 
 8
 Before addressing the merits of plaintiff's claims, we must first resolve a jurisdictional issue. Defendants contend that plaintiff's notice of appeal from the district court's order granting summary judgment was untimely and that, consequently, this court only has jurisdiction to review the district court's August 27, 1993 order denying plaintiff's "motion for reconsideration."
 
 
 9
 On August 18, 1993--eleven business days after the district court entered its summary judgment order--plaintiff filed a document entitled "Motion for Reconsideration of Order Granting Summary Judgment or in the Alternative a Notice of Appeal" (the "combined document"). On August 27, the district court denied plaintiff's motion. Plaintiff then filed a separate notice of appeal on September 24.
 
 
 10
 The Federal Rules of Appellate Procedure require litigants in civil cases to file a notice of appeal "with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from." Fed.R.App.P. 4(a)(1). Plaintiff's September 24 filing was therefore untimely as a notice of appeal from the district court's summary judgment order; it was timely only as a notice of appeal from the district court's denial of plaintiff's "motion to reconsider." If, however, the August 18 combined document constituted a valid notice of appeal from the summary judgment order, it was timely, and this court would have jurisdiction to review the merits of plaintiff's appeal.
 
 
 11
 The Federal Rules of Civil Procedure recognize no "motion for reconsideration." Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992). Instead, this court construes such a filing in one of two ways. If the motion is filed within ten days of the district court's entry of judgment, the motion is treated as a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). Id. Alternatively, if the motion is filed more than ten days after the entry of judgment, it is considered a motion seeking relief from the judgment under Fed.R.Civ.P. 60(b). Id. This distinction can be significant in determining the timeliness of a notice of appeal, for a Rule 59(e) motion tolls the 30-day period, Fed.R.App.P. 4(a)(4)(E), while a Rule 60(b) motion does not, Marshall v. Shalala, 5 F.3d 453, 454 (10th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1309, 127 L.Ed.2d 660 (1994).
 
 
 12
 In Skagerberg v. Oklahoma, 797 F.2d 881 (10th Cir.1986) (per curiam), this court confronted a similar combined motion for relief/notice of appeal under the same version of Fed.R.App.P. 4 as was in force when plaintiff filed her combined document in this case.[1] The appellant in Skagerberg entitled his filing a "Motion for Rule 60 Relief, or Appeal" and filed the document seven days after the district court entered its judgment. Id. at 882. Because the appellant had filed the document within ten days of the entry of judgment, the court treated the motion portion of his filing as a Rule 59(e) motion (despite the appellant's characterization to the contrary). Id. at 883. The court emphasized that because a timely Rule 59(e) motion tolls the period for filing a notice of appeal, "[a] notice of appeal filed while a timely Rule 59(e) motion is pending is ineffective to confer jurisdiction on a court of appeals." Id.; see also Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982). In essence, a district court's judgment becomes "final for appeal purposes only after the district court's disposition of the Rule 59(e) motion." Skagerberg, 797 F.2d at 883. As a result, under the old version of Rule 4, "when a timely Rule 59(e) motion and a notice of appeal are combined in one document the notice of appeal is premature and has no effect." Id.[2]
 
 
 13
 Unlike the appellant in Skagerberg, plaintiff here filed his combined document eleven working days after the entry of judgment. The motion portion of plaintiff's filing therefore was a motion seeking relief from the judgment pursuant to Rule 60(b), not a Rule 59(e) motion to alter or amend the judgment. Cf. Van Skiver, 952 F.2d at 1243. Unlike a Rule 59(e) motion, a Rule 60(b) motion does not toll the time for filing a notice of appeal and does not affect the finality of the district court's judgment. Browder v. Director, Dep't of Corrections, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978). Consequently, a pending Rule 60(b) motion does not prevent an otherwise valid notice of appeal from conferring jurisdiction on the court of appeals. See Marshall, 5 F.3d at 454. Moreover, nothing in Skagerberg indicates that an otherwise valid notice of appeal is made ineffectual by its presentation in the same document as a separate motion. Thus, so long as plaintiff's combined document complied with the content requirements of Fed.R.App.P. 3(c), it constituted a timely notice of appeal from the district court's summary judgment order.
 
 
 14
 Rule 3(c) requires a notice of appeal to specify the party making the appeal, the judgment or order from which the party appeals, and the court to which the appeal is taken. Plaintiff's combined document, while also operating as a motion pursuant to Rule 60(b), comports with each of these requirements;[3] defendants do not contend otherwise. We therefore conclude that the combined document filed by plaintiff on August 18, 1993, constituted a timely notice of appeal from the district court's summary judgment order, and this court has jurisdiction to review the merits of plaintiff's appeal.
 
 III
 
 15
 We review a district court's granting of summary judgment de novo and apply the same legal standard used by the district court. Allen v. Minnstar, Inc., 8 F.3d 1470, 1476 (10th Cir.1993). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate only if the record, viewed in the light most favorable to the party resisting the motion, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 16
 Under Rule 56(c), the "initial burden is on the moving party to show the court 'that there is an absence of evidence to support the nonmoving party's case.' " Manders v. Oklahoma ex rel. Dep't of Mental Health, 875 F.2d 263, 264 (10th Cir.1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). If the moving party meets this threshold requirement, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings." Anderson, 477 U.S. at 248, 106 S.Ct. at 2510 (internal quotation marks omitted). Rather, "there must be sufficient evidence on which a jury could reasonably find for the nonmoving party." Manders, 875 F.2d at 265. With this in mind, we turn to the merits of plaintiff's claims.
 
 
 17
 * We first address plaintiff's due process claim. To assess whether an individual was denied procedural due process, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir.1994); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492-93, 84 L.Ed.2d 494 (1985).
 
 
 18
 To prevail on a due process claim against state officials, a plaintiff must first demonstrate that the Due Process Clause of the Fourteenth Amendment protects the liberty or property interest of which she was allegedly deprived. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). In this case, although plaintiff had no written contract, she contends that the policy manual created an implied-in-fact contract of employment that prohibited the County from firing her except for cause. Plaintiff points primarily to provisions in the policy manual for a systematic employee disciplinary procedure and for employee grievance hearings before the Board of County Commissioners.
 
 
 19
 Whether state officials have violated the Fourteenth Amendment is a question of federal constitutional law, but the preliminary question of whether a plaintiff possessed a protected property interest must be "determined by reference to state law." Casias v. City of Raton, 738 F.2d 392, 394 (10th Cir.1984); see also Paul v. Davis, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976) (stating that property "interests attain ... constitutional status by virtue of the fact that they have been initially recognized and protected by state law"). Moreover, any of several sources of state law, including a local government's personnel policy manual, can create a property interest protected by the Due Process Clause. See Dickeson v. Quarberg, 844 F.2d 1435, 1437 (10th Cir.1988) (stating that protected property interests may be created by "state statutes, local ordinances, established rules, or mutually explicit understandings"). "In the context of a public employee ..., the touchstone is whether, under state law, the employee has 'a legitimate claim of entitlement' in continued employment, as opposed to a 'unilateral expectation' or 'an abstract need or desire' for it." Farthing, 39 F.3d at 1135 (quoting Roth, 408 U.S. at 577, 92 S.Ct. at 2709). We therefore must examine Wyoming law to determine whether the policy manual endowed plaintiff with a "legitimate claim of entitlement" to continued employment with the County.
 
 
 20
 Central to our inquiry is whether plaintiff was an "at-will" employee at the time of her termination. If plaintiff served at the will of the County Treasurer, she could be terminated "at any time, for any reason or for no reason at all." Wilder v. Cody Country Chamber of Commerce, 868 P.2d 211, 217 (Wyo.1994). She therefore could not have had any "legitimate claim of entitlement" to employment with the County. Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991) ("Ordinarily, an employee's at-will status forecloses a property interest claim because the employee has no legitimate expectation of future employment."); Lentsch v. Marshall, 741 F.2d 301, 305 (10th Cir.1984) ("Generally, a government employee ... who may be dismissed 'at will' does not [have a protected property interest]."). On the other hand, if the policy manual created an implied-in-fact contract of employment prohibiting the County from firing plaintiff except for cause, she may have had a legitimate claim of entitlement to her job and hence a protected property interest. See West v. Grand County, 967 F.2d 362, 366 (10th Cir.1992) (county personnel policy manual stating that employees could not be fired "except for cause or reasons of curtailment of work or lack of funds" conferred "a property interest in continued employment that could not be curtailed without constitutional protections"); Patrick v. Miller, 953 F.2d 1240, 1245 (10th Cir.1992) (city charter stating that "appointments and removals shall be made upon the basis of merit and fitness alone" created "a legitimate expectation of continued employment amounting to a property interest that was entitled to due process protection").
 
 
 21
 The general presumption under Wyoming law is that employees serve at the will of their employers. Sanchez v. Life Care Ctrs. of Am., Inc., 855 P.2d 1256, 1257 (Wyo.1993); Rompf v. John Q. Hammons Hotels, Inc., 685 P.2d 25, 27 (Wyo.1984). The Supreme Court of Wyoming, however, has recognized that an employee handbook or personnel manual may create an implied-in-fact contract of employment. See, e.g., Sanchez, 855 P.2d at 1259; Leithead v. American Colloid Co., 721 P.2d 1059, 1063 (Wyo.1986); Mobil Coal Producing, Inc. v. Parks, 704 P.2d 702, 706-07 (Wyo.1985). "The implied in fact contract of employment arises from a mutual agreement and intent to promise which is found in the acts or conduct of the party sought to be bound." Wilder, 868 P.2d at 216. More specifically, under Wyoming law, "a systematic discipline procedure or other language in an employee handbook implying termination may be for cause only may defeat the rebuttable presumption that employment is at will." Lincoln v. Wackenhut Corp., 867 P.2d 701, 703 (Wyo.1994).
 
 
 22
 But in Lincoln, the court also explained that employers who use personnel policy manuals can nevertheless avoid creating implied-in-fact contracts of employment by providing their employees with a "conspicuous and unambiguous disclaimer." Lincoln, 867 P.2d at 703. "The employment at will presumption of Wyoming law may be sustained when unambiguous language disclaiming the formation of a contract is sufficiently conspicuous and present in documents that would otherwise comprise terms of an implied in fact contract of employment." Id. Under Wyoming law, a conspicuous and unambiguous disclaimer that tells the employee that she is an at-will employee puts her "on notice that general statements or conduct [by the employer] do not promise employment security and are not to be relied upon by the employee." Id.
 
 
 23
 In this case, the County provided plaintiff with three separate disclaimers. First, section 103 of the policy manual establishes that employment with the County is presumptively at-will: "In no event shall the hiring of an employee be considered as creating a contractual relationship between the employee and Converse County; and unless otherwise provided in writing, the relationship shall be defined as 'employment at will,' where either party, with appropriate notice, may dissolve the relationship."[4] Second, section 206 of the manual states that "the County reserves the right to terminate employment for any reason." Finally, a separate disclaimer document, signed by plaintiff on May 5, 1991, states:
 
 
 24
 I, Marjorie Hatfield [written by hand], HAVE READ SECTION 103 OF THE CONVERSE COUNTY PERSONNEL POLICY MANUAL. I UNDERSTAND THAT I AM HIRED AT THE WILL OF JAMES L. READ, THE HEAD OF THE TREASURER'S OFFICE, AND THAT I AM SUBJECT TO TERMINATION AT ANY TIME, WITH OR WITHOUT NOTICE, WITH OR WITHOUT CAUSE, AND THAT NOTHING CONTAINED IN THE CONVERSE COUNTY PERSONNEL MANUAL, EMPLOYMENT APPLICATION OR OTHER MATERIALS GIVEN TO ME IN CONNECTION WITH MY EMPLOYMENT WITH THE COUNTY CREATES AN EXPRESSED OR IMPLIED CONTRACT OF EMPLOYMENT FOR A DEFINITE PERIOD OF TIME.
 
 
 25
 We need not decide whether sections 103 and 206 of the policy manual by themselves were adequate to place plaintiff on notice that her employment was at-will, for the separate disclaimer document, with its explicit incorporation of section 103, was sufficiently conspicuous and unambiguous under Wyoming law.
 
 
 26
 In determining whether an at-will employment disclaimer is sufficiently conspicuous and unambiguous, Wyoming courts apply a three-part test. See Lincoln, 867 P.2d at 703-05; Sanchez, 855 P.2d at 1259. First, a court must assess the prominence of the text of the disclaimer: Was the text accentuated with larger, contrasting, or capitalized print, or by some other means? Lincoln, 867 P.2d at 703. Second, a court must examine the placement of the disclaimer: Was it a separate provision such that a reasonable person should have noticed it, or was it presented within a broader, general provision? Id. at 703-04. Finally, a court must determine whether the language of the disclaimer is unambiguous: Does the disclaimer clearly state that employment is at-will, or is it ambiguous concerning the precise effect of the disclaimer on the employment relationship? Id. at 704.
 
 
 27
 We find that the disclaimer at issue in this case meets each element of this three-part test. Cf. Loghry v. Unicover Corp., 878 P.2d 510, 512 (Wyo.1994) (holding that "a separate 8.5" X 11" page which contained a disclaimer and which [the employee] was required to sign" prevented the creation of an implied-in-fact contract of employment). First, the text is prominent; it is printed in capital letters and is the only text appearing on the one-page document. Cf. Lincoln, 867 P.2d at 704 (listing fact that lettering in disclaimer was capitalized as factor enhancing its prominence). Second, given its placement, plaintiff should have noticed the disclaimer; it was presented in a document completely separate from the manual, and plaintiff filled in her name by hand and signed it. Cf. Sanchez, 855 P.2d at 1259 (holding that disclaimer was not physically conspicuous where it was "buried" in the introductory paragraphs of an employee handbook). Finally, the text of the disclaimer is unambiguous; it places any reasonable signatory on notice that her employment with the County is at-will and that the policy manual does not create an implied-in-fact contract of employment. Cf. Lincoln, 867 P.2d at 705 (holding that similarly worded disclaimer was sufficiently unambiguous).
 
 
 28
 Because the disclaimer was sufficiently conspicuous and unambiguous, the policy manual did not create an implied-in-fact contract of employment. Plaintiff therefore was an at-will employee and could not claim any protected property interest in her continued employment with the County.
 
 
 29
 Plaintiff nevertheless contends that because the County initiated the Grievance Board hearing and suspended those proceedings only after plaintiff was assured that she would be reinstated, defendants conferred upon her a "legitimate claim of entitlement" to continued employment. That is, even though plaintiff was an at-will employee prior to the commencement of the Grievance Board proceeding, the subsequent events--particularly the assurance that she would be reinstated--created a protected property interest.
 
 
 30
 This argument, however, underestimates the significance of plaintiff's status as an at-will employee. The disclaimer signed by plaintiff unambiguously states that the County Treasurer could discharge plaintiff "at any time, with or without notice, with or without cause." The County therefore was under no obligation to initiate the Grievance Board hearing in the first place. Moreover, any assurances made to plaintiff when the hearing was suspended did not alter plaintiff's at-will status. As the Wyoming Supreme Court stated in Lincoln, "[a] conspicuous and unambiguous disclaimer ... make[s] any reliance on the subsequent statements of the employer unreasonable." Lincoln, 867 P.2d at 703. Because plaintiff was an at-will employee at all times during her employment with the County, she never possessed a protected property interest in her continued employment.
 
 B
 
 31
 Three of plaintiff's remaining four claims are interrelated, each turning on whether plaintiff had a contract of employment with the County. Having addressed this issue in our resolution of plaintiff's due process claim, these contentions require only brief further discussion.
 
 
 32
 The first of these claims is for breach of contract. Plaintiff contends that the policy manual created an implied-in-fact contract of employment and that the County breached that contract by terminating her without cause. We have already held, however, that the policy manual did not create an implied-in-fact contract; the conspicuous and unambiguous disclaimer signed by plaintiff put her on notice that she was an at-will employee. Because there was no contract that plaintiff could only be fired for cause, there could be no breach.
 
 
 33
 Plaintiff's next claim is that, by terminating her without cause, defendants breached an implied covenant of good faith and fair dealing. Plaintiff correctly points out that the Supreme Court of Wyoming recently held in Wilder that "all contracts of employment contain an implied covenant of good faith and fair dealing." Wilder, 868 P.2d at 220. But plaintiff ignores the requisite condition precedent--that there be a contract of employment. Indeed, "Wyoming follows the rule that either party may terminate an employment 'at will' contract for any reason or without reason and is not violative of any implied covenant of good faith or fair dealing." Chasson v. Community Action, 768 P.2d 572, 575 n. 1 (Wyo.1989). Because plaintiff was an at-will employee, she has no claim for breach of an implied covenant of good faith.
 
 
 34
 Plaintiff's claim of negligent supervision fails for the same reason. Plaintiff specifically asserts that defendants are liable for failing to conduct an adequate investigation of the circumstances surrounding her termination. In Wilder, the Wyoming Supreme Court stated that " '[t]o the extent an employee has an employment contract requiring specific reasons for dismissal, then the employer must conduct an adequate investigation or be liable for breach of that contract.' " Wilder, 868 P.2d at 222 (quoting Lambert v. Morehouse, 68 Wash.App. 500, 843 P.2d 1116, 1119, review denied, 121 Wash.2d 1022, 854 P.2d 1084 (1993)). But again, as the aforementioned language illustrates, an employee's claim against her employer for negligent supervision is predicated on the existence of an employment contract that allows dismissal only for cause. Because plaintiff was an at-will employee, she has no claim against defendants for negligent supervision under Wyoming law. See id. (holding that an employee's action against her employer for negligent supervision lies not in tort but "with an action for breach of contract"). As a result, all three of these claims must fail.
 
 C
 
 35
 Finally, plaintiff contends that, even if she had no implied contract with the County, defendants were estopped from terminating her because they promised her that she would not be fired. Wyoming courts have explicitly recognized promissory estoppel as a cause of action: "If an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages." Doctors' Co. v. Insurance Co. of Am., 864 P.2d 1018, 1029 (Wyo.1993) (internal quotation marks omitted). "[T]he purpose of estoppel is 'to prevent an injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract.' " Davis v. Davis, 855 P.2d 342, 347-48 (Wyo.1993) (quoting Jankovsky v. Halladay Motors, 482 P.2d 129, 132 (Wyo.1971)).
 
 
 36
 A plaintiff asserting a claim of promissory estoppel must demonstrate three components: "(1) a clear and definite agreement; (2) proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and (3) a finding that the equities support the enforcement of the agreement." Michie v. Board of Trustees of Carbon County Sch. Dist. No. 1, 847 P.2d 1006, 1009 (Wyo.1993) (internal quotation marks omitted). Thus, an essential element of any estoppel claim is that the party seeking to enforce the promise "act[ed] to his detriment in reasonable reliance on the agreement." Davis, 855 P.2d at 348. "There can be no estoppel as a matter of law when the asserted reliance is not justifiable or reasonable under the circumstances of the case considered as a whole." Roth v. First Sec. Bank, 684 P.2d 93, 97 (Wyo.1984).
 
 
 37
 In this case, plaintiff asserts that County officials broke two promises (on which she relied to her detriment) regarding her employment. First, in October 1991, County Treasurer Read assured her that she would not be fired. Second, when plaintiff agreed to the suspension of the Grievance Board hearing in January 1992, County officials promised her that she would be reinstated within six weeks.
 
 
 38
 Plaintiff's argument, however, overlooks a critical pronouncement by the Wyoming Supreme Court directly in point: "A conspicuous and unambiguous disclaimer [that employment is at-will] make[s] any reliance on the subsequent statements of the employer unreasonable." Lincoln, 867 P.2d at 703. Having held that the disclaimer signed by plaintiff was sufficiently conspicuous and unambiguous, any reliance by plaintiff on subsequent assurances from County officials was unreasonable as a matter of law. And without reasonable reliance, plaintiff can make no claim of promissory estoppel.
 
 IV
 
 39
 Because the disclaimer signed by plaintiff was sufficiently conspicuous and unambiguous, plaintiff did not have an implied-in-fact contract of employment with the County. And without an employment contract, plaintiff's claims for denial of due process, breach of contract, breach of implied covenant of good faith, and negligent supervision must fail. Moreover, because the disclaimer made any subsequent reliance by plaintiff unreasonable, she has no claim for promissory estoppel. For these reasons, we AFFIRM the order of the district court granting defendants summary judgment.
 
 
 
 d
 The Honorable C. LeRoy Hansen, United States District Judge for the District of New Mexico, sitting by designation
 
 
 [1]
 Rule 4 has subsequently been amended, partially overruling Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982), the decision on which a portion of our holding in Skagerberg was based. See note 2 infra. The new version of Rule 4 became effective December 1, 1993, roughly three months after plaintiff filed her combined document in this case. Because the motion portion of plaintiff's combined document was not a Rule 59(e) motion, see infra, the change in Rule 4 would be immaterial to the disposition of this case even if we applied the new version retroactively
 
 
 [2]
 The amended version of Rule 4 effectively overrules this aspect of Griggs and Skagerberg. Under the current version, a notice of appeal filed while a Rule 59(e) motion is still pending ripens into an effective notice of appeal once the district court has ruled on the pending motion. Fed.R.App.P. 4(a)(4); see also Ogden v. San Juan County, 32 F.3d 452, 454 n. 2 (10th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 750, 130 L.Ed.2d 650 (1995)
 
 
 [3]
 We find no importance in the fact that plaintiff phrased his notice of appeal as an alternative to the motion ("Motion for Reconsideration of Order Granting Summary Judgment or in the Alternative a Notice of Appeal"). It is well-settled that courts should construe the requirements of Rule 3(c) liberally where the document is the functional equivalent of a technically proper notice of appeal. See, e.g., Smith v. Barry, 502 U.S. 244, 248, 112 S.Ct. 678, 681-82, 116 L.Ed.2d 678 (1992) ("Courts will liberally construe the requirements of Rule 3."); Torres v. Oakland Scavenger Co., 487 U.S. 312, 316-17, 108 S.Ct. 2405, 2408-09, 101 L.Ed.2d 285 (1988) (if a document is "technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires"); Ayala v. United States, 980 F.2d 1342, 1344 (10th Cir.1992) (holding that documents "technically at variance with Rule 3(c)" were nevertheless valid because they were "the functional equivalent of a proper notice of appeal"). To the extent plaintiff's combined document was not a technically proper notice of appeal under Rule 3(c), it was nevertheless a functional equivalent
 
 
 [4]
 Comment 1 to section 103 further states: "Employees who do not have a written employment agreement are employed at the will of the County and are subject to termination at any time, for any reason, with or without cause, and with or without notice."