**LeRoy McILRAVY, Allen Lee Mahoney, Richard E. Massman, and Robert H. Gray, Plaintiffs–Appellants,**

v.

**KERR–McGEE CORPORATION, Defendant,**

and

**Kerr–McGee Coal Corporation, a Delaware corporation, Defendant–Appellee.**

No. 94–8080.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1996.

---

Stephen H. Kline of Kline & Jenkins, Cheyenne, Wyoming (Kenneth E. Barker of Quinn, Eiesland, Day & Barker, Belle Fourche, South Dakota, with him on the briefs) for Plaintiffs–Appellants.

Carolyn Gregg Hill (Shelia D. Tims with her on the brief) of Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, Oklahoma, for Defendant–Appellee.

Before TACHA and SETH, Circuit Judges, and BROWN, District Judge.*

WESLEY E. BROWN, District Judge.

The plaintiffs are four individuals who contend their employment was wrongfully terminated by defendant Kerr–McGee Coal Corporation. Based on diversity jurisdiction, plaintiffs' amended complaint asserted three causes of action under Wyoming law: (1)

---

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) promissory estoppel. The district court granted Kerr–McGee Coal's motion for summary judgment as to the first two claims, while the promissory estoppel claim was submitted to a jury. The jury returned a verdict in favor of Kerr–McGee Coal and the district court entered judgment accordingly. On appeal, plaintiffs contend that the district court committed error with respect to all three claims. We affirm.

*Breach of Contract Claim.*

Each of the plaintiffs began his employment with Kerr–McGee Coal between 1976 and 1978 at the Jacobs Ranch Mine south of Gillette, Wyoming. By 1992, each plaintiff had advanced to a first-level supervisory position. In March of 1992, plaintiffs were terminated as part of "Streamline Phase II," a plan by Kerr–McGee Coal to reduce its workforce at the Jacobs Ranch Mine. The plaintiffs, along with other individuals, were selected for termination based upon job performance rankings compiled by the company. Plaintiffs were at the bottom of the rankings for supervisors in their respective departments. The company retained some supervisors who had less seniority than the plaintiffs but who had better performance rankings.

During plaintiffs' tenure at the Jacobs Ranch Mine, Kerr–McGee Coal had issued a series of employee handbooks, including 1976, 1977, 1980, 1985 and 1988 editions. There is no dispute that plaintiffs received these handbooks. Plaintiffs' primary contention is that the initial handbook they were issued—either the 1976 or 1977 edition—contained language promising that they would be terminated only for "cause." More-

over, although plaintiffs concede that the handbooks informed them that there could be a reduction in force by the company, they contend the handbooks promised that any layoffs would be made in order of seniority. Plaintiffs argue that Kerr–McGee Coal breached these promises. As to Kerr–McGee Coal's 1985 and 1988 handbooks, each of which contained a disclaimer stating that the handbook was not an employment contract, plaintiffs contend these were invalid attempts by the company to "unilaterally modify" their existing contractual rights without any supporting consideration.

In ruling on the motion for summary judgment, the district court only found it necessary to address the effect of the 1976 and 1977 handbooks.[1] The court found nothing in these handbooks to alter the presumption under Wyoming law that an employee serves at the will of the employer. The handbooks' references to employees becoming "permanent," the court said, were not sufficient to alter plaintiffs' status. Accordingly, the court granted the defendant's motion for summary judgment on the grounds that plaintiffs were "at-will" employees who could be fired at any time, with or without cause.

■ We review a district court's granting of summary judgment *de novo* and apply the same legal standard used by the district court. *Hatfield v. Board of County Commissioners for Converse County,* 52 F.3d 858, 862 (10th Cir.1995). Under Fed.R.Civ.P. 56(c), summary judgment is appropriate only if the record, viewed in the light most favorable to the non-moving party, reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing *Adickes v. S.H. Kress & Co.,*

---

**1.** Prior to summary judgment, the district court had granted defendant's motion to dismiss the breach of contract claim on the basis of the disclaimer in the 1988 handbook. The court held that the disclaimer was "conspicuous" and was effective to negate any employment contract otherwise implied in the handbook. In so finding, the court was consistent with its holding in a similar case, *Hein v. Kerr–McGee Coal Corporation,* 809 F.Supp. 84 (D.Wyo.1990), aff'd., 956 F.2d 278, 1992 WL 33250 (10th Cir.1992) (unpublished).

The court's ruling on the motion to dismiss apparently assumed that the 1988 handbook, the

last version issued by the employer, governed the breach of contract claim. After their claim was ordered dismissed, plaintiffs filed an amended complaint and argued that an employment contract had been created by the 1976 and 1977 books and that the 1988 handbook could not "unilaterally modify" the prior contract. Because the district court held that the 1976 and 1977 books failed to alter the at-will presumption, it was unnecessary for the court to determine which version of the handbook governed the plaintiffs' claim or to determine whether the 1988 disclaimer could modify an existing implied employment contract.

398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). The substantive law of Wyoming governs the plaintiffs' claims in this diversity action. *See Budd v. American Excess Ins. Co.,* 928 F.2d 344, 346 (10th Cir.1991).

■ We conclude that a genuine issue of material fact exists as to whether Kerr–McGee Coal's 1976 and 1977 handbooks implied that employees would not be dismissed in the absence of "cause." It is true that the general presumption under Wyoming law is that employees serve at the will of their employers. *Sanchez v. Life Care Ctrs. of Am., Inc.,* 855 P.2d 1256, 1257 (Wyo.1993). And, as the district court recognized, a promise of "permanent" employment by itself is not sufficient to alter the at-will presumption. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 218 (Wyo.1994). An employee handbook may alter the presumption, however, if its terms reasonably create an expectation on the part of an employee that the company will not discharge him without cause. *See Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 707 (Wyo.1985).

The 1976 and 1977 handbooks contained more than just a representation that employees were considered "permanent." Upon beginning employment, the plaintiffs were given a lengthy orientation session during which the handbook, referred to by company representatives as the employees' "bible," was covered in detail. The handbook itself stated that it "will acquaint you with certain Company practices and benefits, and your responsibilities as a Kerr–McGee employee," and when questions about such matters arise "the spirit and intent behind these statements will serve as the basis for solutions." The handbooks informed employees that they would become "permanent" after completing a ninety-day "probationary period." They explained that a permanent employee is one who after successfully completing the probationary period "is expected to remain in the employment of the Company indefinitely." *Cf. Leithead v. American Colloid Co.,* 721 P.2d 1059, 1063 (Wyo.1986) (Distinction between probationary and permanent employee, with an explanation that a probationary employee may be discharged at any time during the probationary period, was sufficient to imply that a permanent employee could only be discharged for cause.) The handbooks explained that "an employee's seniority will broken and employment terminated" for any of eight specific reasons, including "discharge." In a section entitled "Conduct on the Job," the handbook listed eleven "Examples of Misconduct Which Generally Result in Discharge for A Single Violation" and twelve "Examples of Misconduct Which Generally Result in Disciplinary Action Less than Discharge for a Single Violation." An introductory paragraph to these examples stated that "[t]he company may also apply disciplinary action up to and including discharge for other valid reasons." *Cf. Leithead,* 721 P.2d at 1063 ("By listing misconduct that could result in discharge, the handbooks imply that cause is required.") The examples of misconduct were followed by a systematic procedure for disciplinary actions against employees including a "first notice," for which an employee was warned that an additional violation would result in three days off without pay; a "second notice," for which an employee was assessed three days off without pay and warned that an additional violation would result in discharge; and a "third notice," for which an employee would be discharged. *See Sanchez,* 855 P.2d at 1259 ("Detailing stages of progressive discipline results in a further implication that cause is required to discharge.") Nowhere in the 1976 and 1977 handbooks was it made clear that the company was not bound by the procedures in the handbook or that despite the general application of such policies the company intended to retain the absolute right to discharge employees at any time with or without cause. Taken as a whole, the 1976 and 1977 handbooks are sufficiently ambiguous that they could be said to have reasonably created expectations on the part of the plaintiffs that the company had promised not to discharge employees absent "cause" for the dismissal.

■ Although we disagree with the district court on this point, we nevertheless conclude that Kerr–McGee Coal was entitled to summary judgment on the breach of contract claim. We may affirm for reasons oth-

er than those relied upon by the district court, as long as those reasons are supported by the record. *Swoboda v. Dubach,* 992 F.2d 286, 291 (10th Cir.1993). Even if a "for cause" standard was generally implied by the 1976 and 1977 handbooks (or the 1980 book[2]), the books also put employees on notice that they were subject to layoffs and termination if there was a reduction in force by the company. Plaintiffs conceded this in the district court, but argued that the company breached a promise to select those affected by a reduction in force on the basis of seniority. We conclude that no genuine issue of material fact exists as to whether Kerr–McGee Coal breached a promise by selecting plaintiffs for termination.

■ Because a genuine factual issue exists as to whether the 1976 and 1977 handbooks created an employment contract, we assume for purposes of summary judgment that such a contract was created. *See Hatfield,* 52 F.3d at 862 (Record is viewed in the light most favorable to the party opposing summary judgment.) The issue then becomes what effect, if any, subsequent changes in the handbooks had with respect to that contract. Two changes after the 1977 edition are potentially significant. The first involves the following disclaimer, which was added to the 1985 and 1988 handbooks:

> This handbook should not be considered as a contract for employment. Any employee may voluntarily leave the company. Likewise, the Company retains the right to discharge employees or reduce manpower levels. Any oral or written statements or promises to the contrary are hereby disavowed. This handbook may be revised from time to time.

Kerr–McGee Coal argues that, regardless of whether or not previous handbooks constituted an employment contract, the above disclaimer was "conspicuous" as a matter of law and necessarily means that plaintiffs could be terminated at the will of the company.

■ The Wyoming Supreme Court has addressed the problem of disclaimers on several occasions. In *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986 (Wyo.1991) ("*McDonald II* "), the Court said an effective disclaimer in an employee handbook must be "conspicuous" and must clearly explain to the employee its effect on the employment relationship. *Id.* at 989. The disclaimer at issue in *McDonald* was found to be ambiguous despite a provision in the employee's application stating that "employment is terminable at the will of either party" and a declaration in the handbook stating that it was intended as a guide but was "not a comprehensive policies and procedures manual, nor an employment contract." *Id.* at 988–89. Later, in *Sanchez v. Life Centers of America,* 855 P.2d 1256 (Wyo.1993), the Court examined a "Handbook Disclaimer" which stated that the company reserved "all the customary rights of management, including the right to . . . change or cancel all personnel policies with or without notice; hire, schedule, terminate, layoff . . . or otherwise manage associates and select the manner, method and means of doing so. This handbook is not a contract and contains no promises, guarantees, representations, agreements, or warranties upon which any prospective, current or prior associates of [the company] can reasonably maintain or create any expectations of such." *Id.* at 1257. This disclaimer was ambiguous, the Court held, because it did not say that the employer retained the right to deviate from the terms of the handbook, the right to change wages and working conditions without consulting the employee or obtaining his agreement, or the absolute power to fire anyone with or without good cause. *Id.* at 1259. More recently, in *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211 (Wyo.1994), an employee contended that his employer, the Board of Directors for the Chamber of Commerce, promised when he was hired that his employment was "permanent" for "as long as I did the work that was required." *Id.* at 214. Three years after he was hired, the Board drew up a "memorandum of understanding" stating that it was placing him on "probationary status" and was conducting an audit, after which it would

---

**2.** We also note that the 1980 handbook issued by Kerr–McGee Coal stated that an employee's continuous service would be considered broken upon "discharge for just cause," whereas previous editions stated simply that it would be broken upon "discharge."

decide whether or not to offer him continued employment. *Id.* at 215. The memorandum, which the employee signed, further stated that "[y]ou are an at will employee, and the Board has the right to terminate at any time for any reason, or for no reason at all. However, we insist on knowing all the facts before any action is taken. Again, you serve at the pleasure of the Board." *Id.* Despite the apparently clear import of these statements, the Wyoming Supreme Court found that the language of the memorandum was ambiguous and that it created mixed questions of fact and law as to the parties' intentions. *Id.* at 219.

Even if we assume that Kerr–McGee Coal could "amend" its employment contract with the plaintiffs by adding the disclaimer to its 1985 and 1988 handbooks, we can only conclude from the decisions discussed above that this disclaimer, although visually "conspicuous," would be considered ambiguous under Wyoming law with respect to its effect on plaintiffs' employment relationship. As a result, the disclaimer does not preclude plaintiffs' breach of contract claim. To warn employees that the handbook was "not an employment contract" was not sufficient under the circumstances to make clear that the company retained the right to deviate from the terms of the handbook. *See McDonald II* and *Sanchez, supra.* Nor was Kerr–McGee Coal's reservation of the right "to

discharge" employees sufficient to clearly explain that the company retained the absolute power to fire anyone with or without good cause. *See Sanchez,* 855 P.2d at 1259. *Cf. Lincoln v. Wackenhut Corp.,* 867 P.2d 701 (Wyo.1994) (Unambiguous disclaimer stated in part, "[T]his handbook is not to be construed by any employee as containing binding terms and conditions of employment. The Company retains the absolute right to terminate any employee, at any time, with or without good cause."); *Loghry v. Unicover Corp.,* 878 P.2d 510, 513 (Wyo.1994). We note that the ambiguity in this case arises in part because of the 1976, 1977 and 1980 handbooks initially issued to the plaintiffs; these prior handbooks contained no disclaimers and implied the adoption of a dismissal-for-cause standard. *Cf. Preston v. Claridge Hotel & Casino, Ltd.,* 231 N.J.Super. 81, 555 A.2d 12, 15 (1989).

We recognize that this court previously found the very disclaimer at issue here to be "conspicuous" as a matter of law. *See Hein v. Kerr–McGee Coal Corp.,* 809 F.Supp. 84 (D.Wyo.1991), *aff'd,* 956 F.2d 278, 1992 WL 33250 (Table) (10th Cir.1992). In light of the Wyoming Supreme Court cases discussed above, however, we must conclude that the disclaimer language would be considered ambiguous under Wyoming law. *Hein* is not dispositive in view of these intervening decisions.[3] We therefore reject Kerr–McGee

---

3. In *Hein,* the district court initially granted the defendant's motion for summary judgment, finding the disclaimer to be "conspicuous" as a matter of law. The court appeared to base its conclusion on the prominent positioning and appearance of the disclaimer. It did not address whether the language of the disclaimer itself could be considered ambiguous. *See Hein v. Kerr–McGee Coal Corp.,* 809 F.Supp. 84, 86 (D.Wyo.1991). After summary judgment was granted, the Wyoming Supreme Court's *McDonald I* decision was published, prompting the plaintiff in *Hein* to move for reconsideration or for leave to amend the complaint. The district court denied the request, concluding that *McDonald I* was not retroactive and, in any event, did not represent a clear change in Wyoming law. *Hein,* 809 F.Supp. at 87.

On appeal, this court agreed "with the district court's reasoning and its conclusion that Kerr–McGee's disclaimer is conspicuous, as a matter of law." *Hein v. Kerr–McGee Coal Corp.,* No. 91–8015, 1992 WL 33250, **2 (10th Cir. Feb. 18, 1992). We also found that the district court did

not abuse its discretion in denying leave to amend the complaint, noting that although the Wyoming Supreme Court had issued a second opinion in the *McDonald* case (*McDonald II,* 820 P.2d 986), "a review of Hein's pleadings reveals no basis for amending such that the issues presented in *McDonald* would apply." *Id.* at **3. In particular, we noted that unlike Hein, the plaintiff in *McDonald* argued that his employer's course of conduct had changed his at will employment status. We also pointed out that Hein had not revealed how the undisputed facts of his case could be applied to "the estoppel-related theories discussed in the *McDonald* opinions" and that he had provided no basis for determining whether an amendment to the complaint should be allowed. *Id.*

*McDonald II* imposed a requirement in Wyoming law that a purported disclaimer of contractual liability in a handbook must be clear as to its effect on the employment relationship. *See McDonald,* 820 P.2d at 989. It is not clear whether we applied that requirement in *Hein* when examining the Kerr–McGee disclaimer. Even if we

Coal's argument that the presence of this disclaimer entitles it to summary judgment.

Aside from the disclaimer, Kerr–McGee also made changes after 1977 to its handbook provisions on "reduction in force." The 1980 handbook, like prior editions, informed employees that in the event of a reduction in force, layoffs would be made on the basis of qualifications and length of company service. "Qualifications" were defined as "the ability of an employee to perform the job in question to the satisfaction of the management of the company." The 1976 and 1977 editions had also contained a subparagraph indicating that layoffs would be made in order of seniority.[4] The 1980 edition, however, omitted this subparagraph and instead indicated that qualifications would be the primary consideration.[5] The 1985 and 1988 handbooks subsequently changed the policy to state simply that "[s]hould it be necessary to reduce the number of employees needed to perform the available work, the Company will reduce the work force as equitably as possible, based on qualifications, job performance, length of service, and company requirements." The 1985 and 1988 books also stated that the company had the right to reduce manpower levels and that any oral or written promises to the contrary were disavowed.

Pointing to the 1976 and 1977 handbooks, plaintiffs argue that they had a contractual right to have layoffs determined from seniority and that the company could not alter this right by issuing a different handbook because no additional consideration was given for the change. In *Durtsche v. American Colloid Co.*, 958 F.2d 1007 (10th Cir.1992), we concluded that Wyoming courts would permit an employer to "unilaterally" amend a handbook without the employee's express acceptance and additional consideration for the change. *Id.* at 1011. We interpreted *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866 (Wyo.1990), *modified on reh'g*, 820 P.2d 986 (Wyo.1991), as implicitly holding that an employer can change the terms of a handbook or disclaim the effect of a contract created thereby if the amendment does so conspicuously and clearly explains to the employee the nature of the change. Since *Durtsche*, the Wyoming Supreme Court has decided several cases involving employee handbooks. None of these alters our belief that Wyoming contract law would permit an employer to amend policies in a handbook provided the employee is properly informed.[6] This approach appears to be supported by the weight of authority and has been adopted by numerous states that, like Wyoming, treat handbooks as enforceable contracts in part because of the "strong equi-

had, however, *Hein* is distinguishable for two reasons. First, the Wyoming Supreme Court cases since *Hein* have found similar disclaimer language to be ambiguous and we are bound to give effect to those decisions. Second, like *McDonald*, there is a genuine dispute of material fact in this case as to whether the employer initially created an employment contract with the employee and subsequently attempted to alter that contract through a handbook disclaimer.

4. The 1976 and 1977 handbooks, after stating that "the determination of the employee or employees to be demoted or laid off will be made on the basis of qualifications and seniority," provided that "[l]ayoffs will be made from the entry level classifications in progression lines or from non-progressional classifications. An employee subject to being laid off from the higher rated non-progressional classification(s) may only displace an employee with less Company Seniority who occupies either an entry level job in a progression line or the lowest rated non-progressional classification(s), provided the employee has the qualifications to perform the work of such classification."

5. The 1980 handbook stated: "When in the judgement of the company two or more employees have equal qualifications, the length of company service will be the determining factor."

6. In *Wilder*, where the employer attempted to modify an individual employee's status with a signed "memorandum of understanding," the Court stated that "an issue of law exists whether there was sufficient consideration at the time of the execution of the memorandum of understanding to modify [the plaintiff's] employment to employment at will...." *Wilder*, 868 P.2d at 219. The Court suggested that traditional contract principles would determine the validity of the modification in that case. *Id. Wilder*, unlike the instant case, did not involve the issuance and modification of an employee handbook. It more closely resembled a "bilateral" contract case, where the promises in question could be characterized as part of a bargained-for exchange between the parties.

table and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice." *Sanchez*, 855 P.2d at 1258. *See e.g., Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 443 N.W.2d 112 (1989) (Employer may unilaterally change its written policy provided the employer gives reasonable notice of the change.); *Fleming v. Borden, Inc.*, —— S.C. ——, 450 S.E.2d 589 (1994); *Hogue v. Cecil I. Walker Machinery Co.*, 189 W.Va. 348, 431 S.E.2d 687 (1993); *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wash.2d 426, 815 P.2d 1362 (1991). These cases recognize that employers must have some flexibility in altering policies to meet changing business conditions. To some extent, the cases also recognize that traditional contract requirements have not been strictly applied by the courts in analyzing the formation of employee handbook "contracts," and thus, it is appropriate to ease the same requirements when it comes to modification of a handbook. *See e.g., Fleming*, 450 S.E.2d at 595 (rejecting strict application of "bilateral" contract principles).

We conclude that under the circumstances of this case, Wyoming contract law would permit Kerr–McGee Coal's adoption of the foregoing changes to its reduction in force policy and its application of those changes to the plaintiffs in 1992. We note that the plaintiffs continued to work at Kerr–McGee Coal for several years after receiving the 1988 handbook and voiced no objection to its provisions.[7] Each of the previous editions of the handbook informed employees that the policies contained in the book could be changed by the company. The 1988 handbook unambiguously gave the company discretion to "reduce the work force as equitably as possible, based on qualifications, job performance, length of service, and company requirements." There is no dispute that the plaintiffs were selected for termination based on the company's assessment of their job performance; the plaintiffs received the lowest performance rankings in their respective departments. This was clearly a permissible

basis upon which to select plaintiffs for the reduction in force. Under the handbook in effect at the time plaintiffs were terminated, plaintiffs' claim for breach of contract fails as a matter of law.

 Although we find that Wyoming contract law would permit Kerr–McGee Coal to amend its handbook in this manner, that does not mean that an employer is free at any time to pull the rug out from under its employees. Wyoming courts have recognized that equitable factors should protect employees against an employer's capricious deviation from personnel manuals. *Sanchez*, 855 P.2d at 1258 (*citing Woolley v. Hoffmann–LaRoche, Inc.*, 99 N.J. 284, 491 A.2d 1257 *modified*, 101 N.J. 10, 499 A.2d 515 (1985)). As we noted in *Hatfield*, 52 F.3d at 866, the doctrine of estoppel is designed to "prevent injury arising from actions or declarations which have been acted on in good faith and which would be inequitable to permit a party to retract." *Id* (*citing Davis v. Davis*, 855 P.2d 342, 347–48 (Wyo.1993)). We think it clear that Wyoming would offer protection against an employer's "capricious deviation" from a handbook by permitting an employee to recover damages if the employee can prove the elements of a claim for promissory estoppel. *See Hatfield*, 52 F.3d at 866–67. As we discuss infra, the plaintiffs asserted such a claim in the instant case, but it was rejected by jury.

*Covenant of Good Faith.*

 Plaintiffs' second claim alleged that Kerr–McGee Coal breached an implied covenant of good faith and fair dealing by terminating them. Plaintiffs argued that their tenure of approximately fifteen years with Kerr–McGee Coal and their various actions in reliance on the belief that they had secure employment established "a special relationship of trust and reliance" sufficient to support a cause of action for the tort of breach of good faith. The district court granted summary judgment on this claim after concluding plaintiffs had failed to show sufficient

---

7. To the extent Wyoming requires some consideration for a change in a handbook, we conclude that the plaintiffs' continued employment without objection in this case would be considered sufficient.

evidence of the "special relationship" required by Wyoming law. We agree with the district court.

 Under Wyoming law, every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *Wilder*, 868 P.2d at 220. "Good faith" means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Id.* (*citing Restatement (Second) of Contracts* § 205 at 100 (1981), comm. a.). The scope of this covenant is limited in the context of employment contracts, however; it does not create a duty for the employer to terminate an employee only for good cause, nor does it mandate that every termination must be for a fair and honest reason. *Wilder*, 868 P.2d at 221. To rise to the level of a tortious breach, the plaintiff must show that a "special relationship of trust and reliance exists between the particular employee seeking recovery and the employer." *Id* (*citing Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722, 729 (1980)). Trust and reliance may be found by the existence of separate consideration, common law, statutory rights, or rights accruing with longevity of service. *Id.*

The *Wilder* Court cited *K–Mart Corp. v. Ponsock,* 103 Nev. 39, 732 P.2d 1364 (1987) as an example of the special relationship necessary to support a cause of action. *Wilder,* 868 P.2d at 221–22. In *K–Mart,* the employer terminated a nine-year employee six months before his retirement benefits vested and did so with the improper purpose of denying him these contractually earned benefits. *See id.* By contrast, the plaintiff in *Wilder* had no claim for tortious breach where he had been employed three years at the time of his termination and there was "no evidence that the termination occurred as a means to avoid payment of benefits already earned under the contract of employment." *Id.*

We agree with the district court that plaintiffs failed to produce sufficient evidence to support a cause of action for breach of good faith. It was interference with "rights accruing with longevity of service," not length of service alone, that formed the basis of the claim in *K–Mart.* As the district court noted, *Wilder* requires at least some evidence of improper motive before an employee's termination can be characterized as an act of bad faith. There is no dispute here that the plaintiffs were terminated because of a reduction in force by the company. The plaintiffs failed to submit any evidence of improper motive and the district court properly granted summary judgment on this claim.

*Promissory Estoppel.*

 Plaintiffs' claim of promissory estoppel was submitted to and rejected by a jury. Plaintiffs' final argument is that the district court erred by giving the jury a special verdict form that misstated the promissory estoppel claim. In particular, plaintiffs point to an interrogatory that asked the jury whether the defendant had made clear and definite representations to each plaintiff "as to the terms and duration of their employment." Plaintiffs argue that the use of the conjunctive "terms *and* duration" required them to prove two claims, either of which would have been sufficient on its own to permit recovery.

Having reviewed the record submitted on appeal in its entirety, we conclude that plaintiffs have demonstrated no prejudice from the manner in which their claim was presented to the jury. The jury was instructed in detail concerning the plaintiffs' contentions, including the allegation that the defendants made representations as to the "terms and duration" of plaintiffs' employment. The phrase "terms and duration" had been adopted by the district court, after much discussion between the parties, as a shorthand way of summarizing plaintiffs' allegations. Plaintiffs' counsel did not object to the use of this language in the instructions. *See* R.Vol.III at 470–71. The instruction on estoppel explained in part that to find for the plaintiffs, the jury must find that defendants made clear and definite representations to each plaintiff as to the terms and duration of their employment and that each plaintiff "reasonably relied on one of these oral and/or written representations to their detriment."

Taken as a whole, the instructions and the verdict form fairly presented plaintiffs' claims. We see no danger that the jury misunderstood plaintiffs' contentions or the requirements of promissory estoppel.

*Conclusion.*

The judgment of the district court is AFFIRMED.